ALAN FISCH *vs.* BOARD OF REGISTRATION IN MEDICINE.

Suffolk. February 5, 2002. - June 13, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Doctor,* License to practice medicine. *Board of Registration in Medicine. Due Process of Law,* Suspension of license to practice medicine. *Administrative Law,* Proceedings before agency, Substantial evidence.

Although the Board of Registration in Medicine, through its complaint counsel, did not follow its own rules when it amended the statement of allegations against a psychiatrist to include facts relating to six new patients without review or approval by the board or its complaint committee, reversal of the board's decision, fining the psychiatrist and suspending his license to practice medicine indefinitely, was not required, because the psychiatrist suffered no prejudice as a result of this failure to follow procedure, given the substantial similarity and time period of the allegations involved, the nearly identical theory of the case being advanced in each instance, and the fact that, at the conclusion of the hearing, the matter came back to the board for final decision. [132-133]

A psychiatrist failed to show that his procedural rights were violated during disciplinary proceedings against him or that he was prejudiced by the extended time frame of the hearing. [133-134]

Substantial evidence clearly supported the decision of the Board of Registration in Medicine to fine a psychiatrist and indefinitely suspend his license to practice medicine on the basis of the board's finding that the psychiatrist had improperly billed an insurance carrier for psychotherapy sessions with patients and their spouses that did not actually occur. [134-137]

In disciplinary proceedings against a psychiatrist, neither the administrative magistrate before whom an adjudicatory hearing was held nor the Board of Registration in Medicine erred in its credibility determinations with regard to testimony given by the psychiatrist and other witnesses. [137-139]

In disciplinary proceedings, findings by the Board of Registration in Medicine as to a psychiatrist's intent to defraud an insurance carrier by improperly billing for psychotherapy sessions with patients and their spouses that did not actually occur were supported by substantial evidence and were not legally erroneous. [139]

In a disciplinary proceeding against a psychiatrist resulting in a $5,000 fine and indefinite suspension of his license to practice medicine, based on a finding by the Board of Registration in Medicine that the psychiatrist fraudulently billed an insurance carrier, the board's sanction clearly reflected its consideration of mitigating factors and was not unduly harsh. [139-140]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 22, 2000.

The case was reported by *Ireland*, J.

*Lee J. Dunn, Jr. (Ira S. Yanowitz* with him) for the plaintiff.

*Daniel J. Hammond*, Assistant Attorney General, for the defendant.

CORDY, J. Alan Fisch, a psychiatrist, contests a decision of the Board of Registration in Medicine (board) fining him $5,000, and suspending his license to practice medicine indefinitely.[1] The board's imposition of these sanctions rested on its finding that Fisch had improperly billed an insurance carrier for psychotherapy sessions with patients and their spouses that did not actually occur. Fisch challenges the procedural regularity of the disciplinary proceedings, the sufficiency of the evidence, and the severity of the sanctions imposed. We affirm the board's decision.

1. *Background.* The disciplinary action against Fisch commenced in February, 1998, when the board issued a statement of allegations charging that he had engaged in conduct that called into question his competence to practice medicine. The substance of the allegations was that Fisch had improperly billed an insurance carrier, Bay State Health Care (Bay State), for psychotherapy sessions with a patient and his wife that did not actually occur. The board ordered Fisch to show cause why he should not be disciplined for this conduct. The matter was referred to the Division of Administrative Law Appeals (division) for an adjudicatory hearing before an administrative magistrate and the issuance of recommended findings of fact and conclusions of law.

On September 17, 1998, following the referral to the division, but prior to the commencement of the hearing, counsel prosecuting the case on behalf of the board (complaint counsel) moved to amend the statement of allegations against Fisch by adding similar claims related to three additional patients and

---

[1]The Board of Registration in Medicine (board) also granted Fisch leave to apply for a stay of his suspension after two years on a showing that he had made restitution to certain overbilled parties and completed 200 hours of community service.

their spouses.[2] The motion to amend was allowed by a division magistrate. The hearing began on October 28, 1998, and continued intermittently over the course of eight months. On June 30, 2000, the magistrate issued his recommended decision in which he concluded that Fisch had repeatedly billed Bay State for psychotherapy sessions that did not occur with regard to three of the patients and their spouses.[3] The magistrate did not make a recommendation as to an appropriate sanction, but identified mitigating circumstances to be taken into consideration.[4]

After reviewing the magistrate's recommended decision and considering memoranda from both parties regarding an appropriate sanction, the board issued its final decision and order on October 25, 2000. It found that Fisch was "guilty of conduct which places into question his competence to practice medicine, including but not limited to practicing medicine fraudulently, in violation of G. L. c. 112, § 5 (c), and 243 [Code Mass. Regs. §] 1.03(5)(a)(3) (1994)." The board also found that Fisch engaged in "conduct that has the capacity to deceive or defraud, in violation of G. L. c. 112, § 5 (h), and 243 Code Mass. Regs. § 1.03(5)(a)(10) (1994)"; "misconduct in the practice of medicine, in violation of 243 Code Mass. Regs. § 1.03(5)(a)(18) (1993)"; and "conduct which undermines public confidence in the integrity of the medical profession and shows a lack of good moral character as defined by *Raymond* v. *Board of Registration in Medicine*, 387 Mass. 708 (1982) and *Levy* v. *Board of Registration [& Discipline] in Medicine*, 378 Mass. 519 (1979)." The board then imposed the sanction noted above.

Fisch moved for reconsideration of the board's sanction, claiming that it was too severe in light of the mitigating factors

---

[2] The couple named in the original statement of allegations is referred to as patient A and spouse, while the three additional couples added by amendment are referred to as patients B, C, and D and their respective spouses.

[3] All allegations pertaining to patient D and his spouse were ultimately dismissed after they refused to testify at the hearing.

[4] The circumstances identified by the magistrate as mitigating included the facts that eight years had passed since the events in question without any other patient complaints; that Fisch was never disciplined by Bay State Health Care (Bay State) or any other insurance provider; that no criminal charges were ever brought against Fisch by an insurance company or any patient; and that patients A, B, C, and their spouses never had to pay any out-of-pocket costs as a result of the erroneous billing.

and board precedent. The board denied Fisch's motion. On December 22, 2000, Fisch filed a petition for judicial review with this court pursuant to G. L. c. 112, § 64, alleging, inter alia, that he had been deprived of due process under both the Federal and State Constitutions. On the same day, he filed a motion to stay imposition of the board's sanction in the county court. The motion to stay was denied. On July 30, 2001, a single justice reserved and reported this case to the full court, without decision.

2. *Discussion.* In relevant part, G. L. c. 112, § 64, provides that a person whose license to practice medicine has been suspended or revoked may petition this court to "enter a decree revising or reversing the decision of the board, in accordance with the standards for review provided" in G. L. c. 30A, § 14 (7). Accordingly, we may set aside or modify an adjudicatory decision of the board only if the decision was legally erroneous, procedurally defective, unsupported by substantial evidence, arbitrary or capricious, or contained one or more of three other enumerated defects not at issue in this case. G. L. c. 30A, § 14 (7).

On appeal, Fisch claims that (1) the magistrate wrongfully permitted the board to amend the statement of allegations to include facts relating to six new patients; (2) the magistrate violated an agreement between the division and the board to Fisch's detriment by conducting the hearing over an eight-month period; (3) the magistrate and the board erred in not following this court's instructions on credibility findings; (4) the preponderance of the evidence did not support the findings of either the division or the board; (5) the evidence presented was insufficient to establish the legal requirement of intent to defraud; (6) the board did not consider all mitigating circumstances; and (7) the board's sanction of Fisch was excessive, constituting an abuse of discretion, and violating his right to due process and equal protection. The burden is on Fisch to demonstrate the invalidity of the board's determination. See *Almeida Bus Lines, Inc.* v. *Department of Pub. Utils.*, 348 Mass. 331, 342 (1965), quoting *Wilmington* v. *Department of Pub. Utils.*, 341 Mass. 599, 605 (1961); *Faith Assembly of God of S. Dennis & Hyannis* v. *State Bldg. Code Comm'n*, 11 Mass. App. Ct. 333, 334 (1981).

a. *Motion to amend statement of allegations.* Fisch claims that by adding new charges involving three more patients and their spouses after the initial statement of allegations had been issued, complaint counsel improperly avoided a review of those charges by the board's "complaint committee"[5] to determine whether proceedings were warranted, and thereby incorporated an unapproved complaint into the division hearing. In addition, Fisch points to the staleness provision at 243 Code Mass. Regs. § 1.03(16) (1993), which states that "[e]xcept where the Complaint Committee or the Board determines otherwise for good cause, the Board shall not entertain any complaint arising out of acts or omissions occurring more than six years prior to the date the complaint is filed with the Board." All of the added allegations occurred more than six years before the complaint, and because the allegations did not go before the complaint committee there was no finding of "good cause" to amend. For these reasons, Fisch contends his procedural rights were violated and the results of the hearing should be set aside.

The allegations added by the amended complaint (with respect to patients B, C, and D) were all but identical to the allegations contained in the original complaint as it pertained to patient A and his spouse. They, as did the original allegations, all involved actions taken by Fisch in the period between 1991 and 1992,[6] and all involved bills sent to Bay State for reimbursement on behalf of his patients for psychotherapy sessions that allegedly did not occur. Insofar as the original complaint had been reviewed by the board's complaint committee, which had deemed it sufficiently serious and well grounded to proceed to a division adjudication, the magistrate evidently concluded that the additional related allegations could be added to the case without further evaluation by the committee.

We conclude that the board, through complaint counsel, did

---

[5]The complaint committee is a committee established by the board, pursuant to 243 Code Mass. Regs. § 1.03(2) (1994), to review complaints charging a licensee with misconduct. The committee has the power to dismiss a complaint as frivolous or lacking in either legal merit or factual basis. 243 Code Mass. Regs. § 1.03(3)(b) (1994).

[6]All of the allegations were thus governed by the "Stale Matters" provision of 243 Code Mass. Regs.§ 1.03(16) (1993).

fail to follow its own rules when it proceeded to add the new charges without review or approval by the board or its complaint committee. However, "[t]here must be some showing of prejudice before an agency's disregard of its own rules may constitute reversible error." *Martorano* v. *Department of Pub. Utils.*, 401 Mass. 257, 262 (1987). Given the substantial similarity and time period of the allegations involved, the nearly identical theory of the case being advanced in each instance,[7] and the fact that at the conclusion of the hearing the matter came back to the board for final decision, there was no prejudice.[8] Reversal is not warranted. See *id.*

b. *Timeliness.* Fisch contends that he was prejudiced by the inordinate length of time required to complete his hearing, which was held on five days over a period of eight months, and that his constitutional rights were violated because the magistrate's recollection of the testimony and demeanor of witnesses was likely to have faded with the passage of time. Fisch did not, however, object to the delay at any point in the proceedings and points to nothing in the record to suggest that the magistrate's recollection of the testimony was in any way impaired by their length. In addition, the timeliness agreement between the division and the board on which Fisch relies is only a guideline, to which the division has agreed to "utilize its best efforts to adhere."[9] We do not interpret such aspirational language as binding on the division, or creating any rights enforceable by the parties to the administrative action. Fisch has

[7]Even if the allegations concerning patients B, C, and D has not been added to the statement of allegations, evidence about them would presumably have been introduced to demonstrate a pattern consistent with the handling of the bills for patient A.

[8]There is no question that Fisch received adequate notice and time to prepare his defense against the added allegations. The motion to amend was brought forty-one days before the hearing began, and the proceedings were not closed until eight months later.

[9]The schedule set out in the agreement was as follows:

First forty-five to sixty days: schedule prehearing conference.

Next fourteen to twenty-one days: hold prehearing conference.

Next sixty to ninety days: commence hearings.

Next sixty days: close record.

Next sixty days: file recommended decision.

failed to show that his procedural rights were violated or that he was prejudiced by the extended time frame of the hearing. See *Martorano* v. *Department of Pub. Utils.*, *supra.*

c. *Substantial evidence.* We review the board's decision in order to determine whether it was supported by "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). See *Lycurgus* v. *Director of the Div. of Employment Sec.*, 391 Mass. 623, 627-628 (1984); *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 465-466 (1981).

In concluding that Fisch was guilty of misconduct, the board adopted the majority of the administrative magistrate's recommended decision, including all fifty-two of his subsidiary findings of fact. After a review of the entire record of the proceedings, we conclude that the board's decision and the underlying findings of fact on which it was based were supported by substantial evidence.

The record reflects that Fisch admitted to billing both patient A and his wife for a cumulative total of twenty-one appointments that never occurred. He claimed that these mistakes were due to a billing error and offered a series of explanations over the course of the investigation for why such an error had occurred. As to patients B and C, and their respective spouses, Fisch did not contend that any billing error had occurred, but rather testified at the hearing that each of the challenged appointments had in fact taken place, and that the patients were simply mistaken in their belief that they had not attended them.[10] The board expressly rejected Fisch's various explanations for the above discrepancies and adopted the magistrate's conclusion that "a clear pattern forms when the three groups of patients are looked at together. . . . There are simply too many errors to ascribe them to mistake or memory lapse."

Bay State first questioned Fisch's billing practices when patient A's wife indicated that she and her husband had not attended a number of sessions for which Bay State had been

[10]The magistrate found that Fisch had billed Bay State for twelve sessions when he did not see or treat patient B; ten sessions when he did not see or treat patient B's wife; eight sessions when he did not see or treat patient C; and fifteen sessions when he did not see or treat patient C's husband.

billed.[11] Fisch eventually admitted to having not seen patient A and his wife on the dates in question and attributed the situation to a billing error. When asked to produce his records on patient A and his wife, Fisch stated that they had "disappeared." He then gave a series of explanations for the erroneous billing that were contradicted by other witnesses at the hearing. He first claimed that some of the errors were caused by his billing service provider who had broken her leg, necessitating the temporary transmission of treatment dates to her over the telephone, resulting in apparent transcription errors of treatment dates. However, the billing provider testified at the hearing that she had never broken her leg and treatment dates were never communicated to her over the telephone. The magistrate credited this testimony and found her to be a credible witness with no apparent reason or motive to lie.[12]

Patient B and his wife each testified that they had not attended psychotherapy sessions with Fisch on most, if not all, of the challenged dates. Patient B stated that he had no affirmative recollection of attending sessions on many of the dates for which he was billed and he referred to his professional diary to refresh his memory regarding his schedule during the time in question. He testified that on several of the challenged dates, it would have been "virtually impossible" for him to have met with Fisch because his diary indicated that he had other appointments and engagements at those times. Patient B also testified that, although he did not know what Fisch meant by it at the time, he recalled the doctor telling him that he was going to "run things through [his wife]." The magistrate characterized

[11]This discrepancy came to her attention because, when patient A terminated his relationship with Fisch and began seeing another therapist, the new therapist's bills were not being fully paid by Bay State. When patient A's wife inquired with Bay State about this situation, she learned that the new claims were being denied because the family had already exhausted their fully covered mental health benefits for the year. This led her to the billing discrepancies involving Fisch.

[12]Patient A's wife also testified that, on the one occasion that she did attend a therapy session with Fisch, he told her he was going to bill her and her husband for two separate sessions, even though they were attending one joint session. She testified that she told Fisch he could not do this because it would be "double billing," and that he responded by stating, "Well, Bay State doesn't pay real well."

patient B as "very cautious when indicating which sessions he did not attend" and observed him to be a "credible witness with no apparent reason or motive to be untruthful in his testimony."

Patient C testified that she had terminated her treatments with Fisch prior to the eight challenged billing dates and was therefore confident that she had not attended these sessions. Her testimony was supported by cancelled checks that she had retained showing her insurance copayment to Fisch at each appointment she attended. She did not have cancelled checks for any of the eight challenged billing dates. In addition, patient C testified that it would have been impossible for her to have seen Fisch on at least one of the challenged dates because she and her husband were on an out-of-State ski vacation during that time. This assertion was supported by a credit card billing statement showing patient C's payment for goods and services at a ski resort during the time in question. The magistrate observed patient C to be a credible witness.

Patient C's husband testified that he attended two sessions with Fisch, but did not attend the subsequent fifteen visits for which Bay State was billed on his behalf. Like his wife, he referred to evidence in the form of canceled checks for the two sessions he said he attended. He also testified that it would have been impossible for him to attend one of the challenged sessions because he was away on active military duty at the time. A credit card billing statement showing charges at the military base was submitted to support his claim.

Fisch's proffered explanations of each of the above events do not negate the evidence, but instead go only to its weight. The magistrate was under no requirement to accept Fisch's version of events and there was ample support in the record for the proposition that Fisch had changed his story several times in order to account for inconsistencies in his billing procedures. The board found a "clear pattern" in Fisch's actions with respect to each group of patients: He "saw each patient individually and then asked to meet that patient's spouse"; then after one or two meetings with the spouse, "Dr. Fisch proceeded to charge their insurance company for an amount of visits that approached, but did not exceed what would be covered." We will not disturb the board's findings unless our review of the

record as a whole fails to disclose substantial evidence to support it. See *Embers of Salisbury, Inc.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 526, 529 (1988). In this case, substantial evidence clearly supports the decision of the board.

d. *Credibility findings.* Fisch argues that the magistrate erred by not discussing the strength of his memory in his recommended decision and by only crediting parts of certain witnesses' testimony without sufficient explanation. He relies on our decision in *Herridge* v. *Board of Registration in Medicine*, 420 Mass. 154 (1995), *S.C.*, 424 Mass. 201 (1997), for the proposition that where credibility findings were made long after testimony was given, the administrative magistrate must assure the board (and the court) that he had sufficient memory of the proceedings and the witnesses to make valid credibility findings. Such reliance is misplaced because our discussion in that case was in reference to the suggestion that the board might remand the case to the hearing officer for further credibility findings, some two years after she had issued her original decision. *Id.* at 166-167. In this context we stated that, "[i]n view of the passage of time since the hearing was held, if the board chooses this route, it must ensure that the hearing officer retains a sufficient memory of the proceedings to make an informed decision on the issue of credibility." *Id.* at 167. No such circumstances are present in this case.

Fisch also argues that the board's credibility determinations are legally insufficient under the rule articulated in *Herridge* v. *Board of Registration in Medicine, supra*, because "the board could not choose to rely on portions of [the patient's] testimony, reject other, significant portions of it, and fail to explain its reasons for doing so," without first making "an explicit analysis of credibility and the evidence bearing on it." *Id.* at 164, 165, quoting *Morris* v. *Board of Registration in Medicine*, 405 Mass. 103, 107, cert. denied, 493 U.S. 977 (1989). In the present case, the board did not reject significant portions of witnesses' testimony while relying on other portions. Instead, it adopted the magistrate's credibility findings in full and found each of the complaining witnesses to be entirely credible. Unlike the *Herridge* case, the board in this case did not affirmatively discount any aspects of the patients' testimony or that of Fisch's

former employees; therefore, no further explanation of its analysis was required.

In reviewing agency decisions such as these, "[i]t is for the agency, not the courts, to weigh the credibility of witnesses and to resolve factual disputes." *Embers of Salisbury, Inc.* v. *Alcoholic Beverages Control Comm'n, supra* at 529, quoting *School Comm. of Wellesley* v. *Labor Relations Comm'n,* 376 Mass. 112, 120 (1978). "A court may not displace an administrative board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.,* quoting *School Comm. of Wellesley* v. *Labor Relations Comm'n, supra.* However, a reviewing court may vacate an agency's decision as unsupported by substantial evidence if the decision provides no means of analyzing the agency's assessment of credibility. See *Herridge* v. *Board of Registration in Medicine, supra* at 163- 165. In this case, the magistrate's decision provided adequate indications of his credibility findings, with respect to both Fisch and the witnesses who testified against him. For example, his decision indicates that he did not find Fisch to be a credible witness because there were "simply too many errors to ascribe them to mistake or memory lapse," and that he observed the demeanor of each witness who contradicted Fisch's testimony and found the key witnesses to be credible and without bias or motive to lie.

In addition, although the magistrate acknowledged that certain witnesses were testifying about events that had taken place as many as eight years ago, he explained why such testimony was nonetheless credible. For example, he noted that patient B relied on his contemporaneous entries in a diary, while patient C and her husband used cancelled checks to supplement their recollection of when they visited Fisch. Fisch argues that he too presented contemporaneous records, in the form of his session notes, to support his contention that the challenged sessions actually took place. However, the magistrate did not credit Fisch's contention that the notes were fully contemporaneous. Instead, he found that, while much of what Fisch wrote about the patients' sessions was accurate, it would not have been communicated to Fisch on the recorded dates. Based on the credited

testimony of other witnesses, the magistrate found that "information communicated . . . in a few sessions, was represented in Dr. Fisch's records in many sessions, over a longer period of time." He therefore refused to credit much of Fisch's testimony. It was clearly within his province to do so. It was also within the board's province to accept the magistrate's credibility determination as it did. We find no error.

e. *Intent to defraud.* Fisch next argues that the board's conclusion regarding his intent to defraud was legally erroneous because there was no specific proof of his intent offered to support this finding. We disagree. Under our law, fraudulent intent may be shown by proof that a party knowingly made a false statement and that the subject of that statement was susceptible of actual knowledge. See *Snyder* v. *Sperry & Hutchinson Co.*, 368 Mass. 433, 444 (1975). No further proof of actual intent to deceive is required. *Id.* The board found that Fisch billed Bay State for patient services that he knew he did not provide. There was also evidence in the record that Fisch believed Bay State's reimbursement rates were too low and that he overstated charges in order to compensate for these low rates. See note 12, *supra.* The board's findings as to Fisch's intent to defraud were supported by substantial evidence and were not legally erroneous.

f. *Mitigating circumstances and the sanction imposed.* Fisch contends that the board did not properly consider mitigating circumstances in imposing its sanction on him and that the sanction imposed was unduly harsh. He cites to a number of our cases, as well as board precedent, setting forth the mandate that mitigating circumstances be considered in imposing sanctions. See, e.g., *Herridge* v. *Board of Registration in Medicine, supra*; *Waisbren* v. *Board of Registration in Medicine*, 418 Mass. 756 (1994); Matter of Birk, Adjudicatory Case No. 94-15-DALA (June 28, 1995).

In the present case, the board found that Fisch's actions undermined public confidence in the medical profession and that his actions in trying to explain the incorrect billings were continually deceitful. Ordinarily, the board considers revocation of the license to practice medicine to be the appropriate sanction for fraudulent billing. See Matter of Hallett, Adjudicatory Case No. 88-54-TR (Sept. 6, 1989). See also Matter of Pearl-

man, Adjudicatory Case No. 91-8-DALA (Sept. 9, 1992). However, in this case the board chose not to revoke Fisch's license permanently, but instead to suspend it indefinitely, allowing him to seek a stay of the suspension after two years, upon payment of full restitution and completion of 200 hours of community service. The board's choice of sanction indicates that it did consider mitigating circumstances. In its final decision and order, the board expressly stated that it considered "the particular circumstances of the cases before it, as well as the high regard in which [Fisch] is apparently held by colleagues" and the fact that "the events at issue occurred over eight years ago and . . . there have been no complaints since." While the administrative magistrate identified other mitigating factors that were not adopted or specifically referenced by the board in its decision, we do not conclude that the board failed to consider them, particularly when the sanction imposed by the board clearly reflected the consideration of mitigating factors and was not unduly harsh. We do not find the board's sanction to be improvidently formulated or an abuse of discretion.[13]

3. *Conclusion.* The decision of the board is therefore affirmed.

*So ordered.*

---

[13]It would be preferable for the board to recite in its decisions all the mitigating factors it has considered, even those it rejected or declined to credit. This would avoid the type of challenge raised in this case.