DAVID P. INGALLS *vs.* BOARD OF REGISTRATION IN MEDICINE.

Suffolk. October 7, 2005. - November 14, 2005.

Present: MARSHALL, C.J., IRELAND, SPINA, & CORDY, JJ.

*Board of Registration in Medicine. Doctor,* License to practice medicine. *License. Due Process of Law,* Administrative hearing, Revocation of license. *Administrative Law,* Hearing, Evidence, Substantial evidence.

This court concluded that 243 Code Mass. Regs. § 103(16) (1993) did not require the Board of Registration in Medicine (board) to make a specific, written finding of good cause on complaints against the plaintiff doctor that were more than six years old prior to proceeding with an investigation that led to the revocation of the plaintiff's license to practice medicine, and that the board's statements of allegations were sufficient to show that the board had made a finding of good cause [294-296]; further, the board did not unduly delay in pursuing the claims against the plaintiff, and there was no evidence that the record before the administrative magistrate was incomplete [296-298].

There was no merit to the claim that the Board of Registration in Medicine (board), in a proceeding to revoke the plaintiff's license to practice medicine, improperly considered testimony outside the record [298-299]; moreover, although counsel prosecuting the case on behalf of the board erred by failing to notify the plaintiff of her intent to introduce the testimony of victims at the disposition hearing, the error did not prejudice the plaintiff [299-300].

In a proceeding of the Board of Registration in Medicine (board) to revoke the plaintiff's license to practice medicine, substantial evidence supported the board's findings of fact, and the determinations as to the credibility of witnesses were well reasoned and supported by the record. [300-303]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 5, 2003.

The case was reported by *Spina,* J.

*Eve Slattery (Paul Cirel* with her) for the plaintiff.

*William W. Porter,* Assistant Attorney General, for the defendant.

IRELAND, J. On November 19, 2003, the Board of Registration in Medicine (board) revoked David P. Ingalls's (plaintiff's) license to practice medicine based on findings that he had com-

mitted repeated acts of misconduct with adolescent female patients. On December 5, 2003, the plaintiff filed a petition for judicial review pursuant to G. L. c. 30A, §§ 14 and 15, and G. L. c. 112, § 64, and a motion for a stay of revocation pending appeal. A single justice of this court denied the plaintiff's motion for a stay pending appeal.

On December 23, 2004, a different single justice reserved and reported five questions raised in the plaintiff's petition to the full court: (1) whether 243 Code Mass. Regs. § 1.03(16) (1993) requires a specific, written finding of good cause to proceed on complaints more than six years old or whether the issuance of a statement of allegations is sufficient to imply a finding of good cause; (2) whether the due process protections of the United States Constitution or the Massachusetts Declaration of Rights were violated by the board's hearing complaints filed significantly after the incidents complained of had occurred; (3) whether victim impact statements properly may be accepted by the board after the close of evidence, but before it makes its decision whether to accept, reject, or amend the administrative magistrate's recommended decision, and, if proper, whether such statements are subject to the testimonial strictures of G. L. c. 30A; (4) whether due process was violated by the manner in which the board received the victim impact statements; and (5) whether the decision of the board was supported by substantial evidence. Because we conclude that the board's proceedings were proper and its decision to revoke the plaintiff's license to practice medicine is supported by substantial evidence, we affirm the final decision and order of the board revoking the plaintiff's license.

*Facts and procedural history.* We present facts from the record, reserving some details for our discussion of the issues. On January 9, 2002, the board commenced proceedings against the plaintiff by issuing a statement of allegations under G. L. c. 112, § 5, alleging that the plaintiff engaged in sexual misconduct with Patients A, B, and C. The board referred the matter to the division of administrative law appeals (DALA) to conduct an adjudicatory hearing. On August 21, 2002, a second statement

of allegations regarding the plaintiff's sexual misconduct was filed as to Patients D and E, which was also referred to DALA.[1]

Following a hearing on the allegations, on June 5, 2003, the administrative magistrate issued a twenty-nine page recommended decision in which she found that the counsel prosecuting the case on behalf of the board (complaint counsel) had established that the plaintiff had committed sexual misconduct with Patients A, C, and D, and recommended to the board that it impose appropriate sanctions on the plaintiff.

On July 2, 2003, the board notified the parties by letter of the final disposition hearing. The letter stated that each party would be permitted to make a presentation and required that the presenting party notify the board and opposing party by letter of its plan to make a presentation prior to the hearing. The complaint counsel appropriately requested the board's permission to present the testimony of Patients A, C, or D, but failed to notify the plaintiff that the patients would testify at the disposition hearing. The parties appeared before the board on September 17, 2003, and the plaintiff objected to the inclusion of the testimony of Patients A and C during the complaint counsel's presentation.[2]

On November 19, 2003, the board issued a final decision and order revoking the plaintiff's license to practice medicine. The board adopted the administrative magistrate's recommended decision, and added that it had explicitly found good cause to proceed in the case when it issued the statement of allegations. The board concluded that revocation was the proper sanction

[1]The administrative magistrate later found that the plaintiff "committed sexual misconduct and boundary violations with three (3) adolescent females, ages thirteen (13), fifteen (15) and seventeen (17). During the physical examinations in his office, he touched the breasts of these young women for no legitimate medical purpose, several times in the case of Patient C . . . ." She also found that the plaintiff viewed the pubic area of one of the girls "for no legitimate medical purpose, and leaned or rubbed his penis against two of them during the course of the physical examinations."

[2]The parties failed to exercise their right to have the sanction hearing proceedings transcribed; however, there is no requirement that the sanction hearing be transcribed. See Weinberg v. Board of Registration in Med., 443 Mass. 679, 690 (2005). Moreover, the board does not contest that the plaintiff's objection was made.

for each violation of law, "and not a combination of any or all of them."

*Standard of review.* "Under G. L. c. 112, § 64, a person whose license to practice medicine has been revoked may petition the court to 'enter a decree revising or reversing the decision of the board, in accordance with the standards for review provided' in G. L. c. 30A, § 14 (7)." *Weinberg* v. *Board of Registration in Med.*, 443 Mass 679, 685 (2005), quoting *Fisch* v. *Board of Registration in Med.*, 437 Mass. 128, 131 (2002). "The court may modify or set aside the board's final decision only if the petitioner demonstrates that the decision was legally erroneous, procedurally defective, unsupported by substantial evidence, arbitrary or capricious, or contained one or more of three other enumerated defects not at issue here." *Weinberg* v. *Board of Registration in Med.*, *supra*, citing *Fisch* v. *Board of Registration in Med.*, *supra*. We now turn to the reported questions.

*Discussion.* 1. *Board proceeding.* a. *Good cause.* With respect to Patients A and D, the plaintiff argues that, where the events that gave rise to their allegations occurred more than six years before the complaint was filed, the complaints were stale, and therefore, the board was required to make a specific, written finding of good cause prior to proceeding with the investigation. He further argues that the statements of allegations are insufficient to show that the board made a finding of good cause. We find both arguments unpersuasive.

The regulation regarding stale complaints states:

> "*Stale Matters.* Except where the Complaint Committee or the Board determines otherwise for good cause, the Board shall not entertain any complaint arising out of acts or omissions occurring more than six years prior to the date the complaint is filed with the Board."

243 Code Mass. Regs. § 1.03(16) (1993). "A regulation is to be read in the same manner as a statute." *Tesson* v. *Commissioner of Transitional Assistance*, 41 Mass. App. Ct. 479, 482 (1996). We give words of the regulation their plain and ordinary meaning. See *id.*

The regulation clearly states that either the complaint com-

mittee or the board must determine that good cause exists prior to entertaining a complaint regarding a physician; however, there is no language requiring that an explicit, written finding of good cause must be made before pursuing a complaint.[3]

Moreover, even if we agreed that the regulation requires a specific finding of good cause in cases filed more than six years after the misconduct, there would be inadequate grounds to reverse the board's determination that the plaintiff's license should be revoked. The board imposed the sanction of revocation "for *each* violation of law listed in the Conclusion section [of the administrative magistrate's recommended decision] and not a combination of any or all of them." Patient C's December, 1999, complaint was filed fourteen months after the plaintiff's misconduct, and thus it was not "stale." Therefore, because the conclusions with respect to Patient C provide an independent ground for revoking the plaintiff's license, the result in this case would not change.

With respect to the statement of allegations, the plain reading of the applicable regulation, 243 Code Mass. Regs. § 1.03(9) (1993), also applies. A statement of allegations is issued when "there is reason to believe that the acts alleged occurred and constitute a violation for which a licensee may be sanctioned by the Board." *Id*.[4] The regulation does not require an explicit finding of "good cause" on the face of a statement of allegations.

In this case, on two occasions, the board issued a statement of allegations (statement) regarding the complaints against the plaintiff. In the opening paragraph of each statement, the board declared that it "has reason to believe that [the plaintiff] committed sexual misconduct." Because the regulation requires nothing more, the statements were sufficient.

As to the plaintiff's argument that the board never found good cause to proceed with the investigation in any event, we

---

[3]We have considered, but need not address, every argument the plaintiff has advanced in support of his interpretation of the regulation.

[4]Title 243 Code Mass. Regs. § 1.03(9) (1993) states, in relevant part: "*Board Action Required.* . . . [I]f the Committee determines that there is reason to believe that the acts alleged occurred and constitute a violation for which a licensee may be sanctioned by the Board, the Committee may recommend to the Board that it issue a Statement of Allegations."

disagree. Prior to the board's investigation, there were three separate, but similar, allegations regarding the plaintiff's sexual misconduct with adolescent females. Good cause is evident.[5]

b. *Due process.* The plaintiff argues that his due process rights were violated by the board's hearing complaints filed significantly after the incidents complained of occurred. He argues that he was prejudiced by these proceedings because the board exercised undue delay in pursuing the patients' claims, and he does not recall the appointments that are the subject of the allegations. Due process rights are implicated in administrative proceedings that may affect the right to practice medicine. See *Goldstein* v. *Board of Registration of Chiropractors*, 426 Mass. 606, 613 (1998). However, the plaintiff's assertions fail to give rise to any violations of due process.

The plaintiff's claims are based on laches. The plaintiff relies on *Appeal of Plantier*, 126 N.H. 500, 508-509 (1985), in which the Supreme Court of New Hampshire held that under the due process clause of the New Hampshire Constitution, a defense of laches could be raised by a physician in a disciplinary hearing, to argue that a similar defense applies in this case. In Massachusetts, however, "[l]aches is not generally a bar where a public right is being enforced." *Wang* v. *Board of Registration in Med.*, 405 Mass. 15, 20 (1989) (four-year delay by board before initiating investigation of physician did not trigger doctrine of laches). Certainly here, where there is no evidence of delay by the board, and no evidence that the record before the administrative magistrate was incomplete, the plaintiff was not prejudiced by the proceedings. Cf. *Weiner* v. *Board of Registration of Psychologists*, 416 Mass. 675, 682 (1993) (record incomplete because of twenty-year delay of board prosecution, prejudicing petitioner).

The board acted immediately on receiving information regarding the complaints of Patients A and C from the Essex County district attorney's office in 1999. It was reasonable for the board to investigate the allegations in the period between 1999

[5]At oral argument, citing no authority, the board averred that its discrete good cause determination prior to investigation is not separately reviewable by this court. Based on our conclusion that in this case good cause to proceed is plainly evident, we need not reach the issue of reviewability.

and 2002, at the conclusion of which it issued a statement of allegations as to Patients A and C.

Further, the delay regarding Patient D was not due to the board. Patient D reported the alleged abuse in March, 2002, seven years after she received treatment as a thirteen year old and two days after reading a newspaper article about the charges facing the plaintiff. The board acted quickly thereafter, investigating the complaint and issuing a statement of allegations regarding her complaint in August of 2002.

Moreover, the plaintiff does not claim that the complainants' records were missing or incomplete during his administrative hearing. Indeed, the administrative magistrate considered the full record, including the patients' complete medical files. We therefore conclude that there was no delay on the part of the board and no evidence of prejudice.

The plaintiff's claim that he does not remember the appointments that are the subject of the allegations also lacks merit. We base our analysis on the administrative magistrate's findings of fact.

The plaintiff was made aware of the allegations as to Patient A immediately after the misconduct took place. Patient A and her parents met with the plaintiff at the Newburyport police station in the fall of 1985, shortly after Patient A reported the plaintiff's massaging of her breast and looking down her underpants during a July, 1985, "routine" preemployment physical for a supermarket cashier position. At a subsequent meeting at a court house between Patient A, her parents, and the plaintiff, the plaintiff agreed to get psychiatric counseling and to have a nurse or chaperone present during future examinations of female patients. Based on these events, as the administrative magistrate found, it is not credible for the plaintiff to claim that he does not recall the appointment that was the subject of Patient A's allegations. Therefore, as to Patient A, he was not prejudiced.

With respect to Patient C, the plaintiff also learned of the patient's allegations immediately after his misconduct. From 1996 to 1998, the plaintiff was the primary care physician for Patient C, who was then living at a boarding school for adolescents who were involved with the Department of Mental Health and had problems at home. On November 1, 1998,

Patient C approached her school nurse regarding multiple separate incidents where the plaintiff touched her breasts for no apparent medical purpose. The patient specifically recalled an October 30, 1998, appointment where the plaintiff groped her breasts when she sought treatment for a sore throat. Patient C later revealed several such instances that occurred over the course of a two-year period. After Patient C's report, the case was referred for criminal investigation, and on May 25, 1999, the plaintiff was interviewed by State troopers regarding his conduct. The plaintiff read his statement after the interview and initialed each page, thereby verifying that he had read it and that it was accurate. The board issued a statement of allegations as to Patient C in 2002. Based on these distinct events following the plaintiff's appointment with Patient C, and the short time between the plaintiff's misconduct as to Patient C and the board investigation, the plaintiff was not prejudiced.

Patient D was thirteen years old when she saw the plaintiff, in 1995, for a sore throat. The plaintiff cupped his hands around her breasts while leaning up against her knees with an erection. For many reasons, including her young age, Patient D failed to report this misconduct until 2002, not fully two years after she reached her majority. The plaintiff may not use Patient D's failure to report during her tender years as a shield. See *Flynn* v. *Associated Press*, 401 Mass. 776, 780 n.6 (1988) ("Plaintiffs who are minors are protected by tolling of the statute of limitations until they attain their majority"). Given these circumstances, the delay was understandable, and therefore the plaintiff may not claim prejudice.

2. *Victim impact statements.* a. *Propriety of victim impact statements.* The plaintiff argues that the statements of Patients A and C, heard by the board after the administrative magistrate issued her recommended decision, were new evidence the board relied on to make its final determination. In particular, the plaintiff asserts that the board's sanction discussing the victims' "harm" illustrates that the board improperly considered testimony outside the record. We disagree.

The board adopted the findings of the administrative magistrate, and concluded:

"The [plaintiff] has committed repeated acts of

misconduct with adolescent female patients by conducting unnecessary examinations that failed to meet the standard of care. The pattern, extent, and severity of misconduct over time, and the *harm* the [plaintiff] has caused three patients, is so egregious that it merits revocation of the [plaintiff's] license to practice medicine" (emphasis added).

The administrative magistrate's factual findings that three adolescent girls were inappropriately touched in a sexual manner during "routine" visits to the doctor clearly supports an inference of harm. Therefore, the board properly included harm in its decision. In light of the foregoing, the plaintiff was not prejudiced by the patients' statements to the board, and as such, this argument fails.[6]

b. *Due process*. The plaintiff argues that his due process rights were violated by the complaint counsel's failure to notify him of the planned introduction of the testimony of Patients A and D at the disposition hearing and the plaintiff's inability to cross-examine the patients during the hearing. We conclude that the complaint counsel erred by failing to send the plaintiff a copy of her request to use the ten-minute presentation period permitted by the board; however, "[t]here must be some showing of prejudice before an agency's disregard of its rules may constitute reversible error." *Martorano* v. *Department of Pub. Utils.*, 401 Mass. 257, 262 (1987).

The letter from the board regarding the final disposition meeting stated that each party was permitted to make a ten-minute presentation that could be used in any way the party chose, including that the complaint counsel "may use all of the time, or may give some or all of the time to the complainant(s)." This

___

[6]The plaintiff's claim that he lacked an opportunity to cross-examine the patients who spoke at the sanctioning hearing is similarly spurious. The fact finding in this case was conducted at the DALA hearing, where the plaintiff was given ample opportunity to cross-examine the board's witnesses and present his testimony and that of his witnesses. By contrast, the September 17, 2003, hearing was a sanctioning hearing where the plaintiff presented his objections to the administrative magistrate's recommended decision and his position regarding the appropriate sanction. It "[was] dispositional in nature, not part of the underlying fact finding." *Weinberg* v. *Board of Registration in Med.*, 443 Mass. 679, 690 (2005). As such, the testimonial strictures of G. L. c. 30A did not apply.

language clearly indicates that statements by complainants were foreseeable. Therefore, we conclude that the board's letter gave the plaintiff ample notice of the possibility that the complainants would speak. Given that more specific notice would not have informed the plaintiff as to the content of the presentation, and that there is no right to cross-examine witnesses at the sanctioning stage of the proceedings in any event, see *Weinberg* v. *Board of Registration in Med.*, 443 Mass. 679, 690 (2005), the plaintiff was not prejudiced by the complaint counsel's presentation.[7]

3. *Substantial and credible evidence of misconduct.* The plaintiff argues that the decision of the board was not supported by substantial evidence. Specifically, he contends that the board systematically ignored any evidence that weighed against the patients' testimony in the administrative hearing and that the testimony of Patients A, C, and D was not credible.

"We will not disturb the board's findings unless our review of the record as a whole fails to disclose substantial evidence to support it." *Fisch* v. *Board of Registration in Med.*, 437 Mass. 128, 136-137 (2002). " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). "We have noted the limited nature of our review under the substantial evidence standard. 'While we must consider the entire record, and must take into account whatever . . . detracts from the weight of the agency's opinion . . . as long as there is substantial evidence to support the findings of the agency, we will not substitute our views as to the facts' " (citations omitted). *Wang* v. *Board of Registration in Med.*, 405 Mass. 15, 21 (1989). Applying this standard, we find that there is substantial evidence to support the board's decision.

The record reflects that all three patients saw the plaintiff for

_____

[7]We further note that in proceedings of this type victim impact statements are now expressly permitted by statute. See G. L. c. 112, § 5, as amended through St. 2004, c. 108 ("Upon final consideration of a disciplinary matter before the board, and before the board's vote on final disposition, the board shall provide the victim or his representative an opportunity to be heard through an oral or written victim impact statement, at the victim's or his representative's option, about the impact of the injury on the victim and his family and on a recommended sanction").

medical issues not requiring a breast examination. Each patient was an adolescent, and each patient testified to nearly identical incidents where, while unchaperoned in one of the plaintiff's examination rooms, their breasts were massaged, groped, or cupped for no apparent medical purpose. In the case of the two patients who were youngest when the incidents occurred, their testimony was that the doctor rubbed his erect penis directly against their legs for anywhere between one and several minutes.

The board's expert, Dr. Robert A. Baldor, also testified that there would be no legitimate medical reason to touch the breasts of any of the three patients in the circumstances surrounding their treatment. He further testified that when examining the breasts of an adolescent, the standard practice is to have a chaperone present in the examination room. In no circumstance, he explained, is it proper for a physician to have his groin in contact with a patient; when examining a seated patient from the front, the practice is to stand to the right of the patient.

Contrary to the plaintiff's assertions, regarding the strikingly similar improprieties that took place from 1985 to 1998 in the plaintiff's examination rooms with these young women, the administrative magistrate did not systematically ignore any testimony or evidence. The patients' testimony was consistent. The board adopted each of the administrative magistrate's 128 well-supported findings of fact. We see no reason to disturb those findings.

With respect to the witnesses' credibility, "[i]n reviewing agency decisions such as these, '[i]t is for the agency, not the courts, to weigh the credibility of witnesses and to resolve factual disputes.' " *Fisch* v. *Board of Registration in Med.*, *supra* at 138, quoting *Embers of Salisbury, Inc.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 526, 529 (1988). "While the task of assessing the credibility of witnesses is one uniquely within an agency's discretion . . . this court may modify or set aside findings and conclusions that are arbitrary or unsupported by substantial evidence." *Herridge* v. *Board of Registration in Med.*, 420 Mass. 154, 161 (1995), *S.C.*, 424 Mass. 201 (1997), quoting *Bettencourt* v. *Board of Registration in Med.*, 408 Mass. 221, 227 (1990), and cases cited. The administrative magistrate

quite clearly explained her reasons for finding the patients' testimony credible and the plaintiff's testimony lacking in credibility. Therefore, we do not disturb her findings in this regard. Cf. *Herridge* v. *Board of Registration in Med., supra* at 164-165, and cases cited (board improperly chose to rely on some portions of witness's own conflicting testimony while rejecting other, significant portions of it, and failed to provide explicit analysis of credibility).

The administrative magistrate found the incidents about which the patients testified remarkably similar. She also found that the patients' ages, lack of maturity, lack of organization, and lack of a reason to fabricate the allegations were sufficient to support a finding that the plaintiff committed the alleged acts. The testimony of the various patients did not suffer from the level of internal inconsistencies seen in the *Herridge* case. Therefore, a more specific analysis of credibility was not required.

By contrast, the administrative magistrate found the plaintiff unreliable by virtue of, among other things, "the loopholes in his stories and his general demeanor during the course of the hearing." See *Fisch* v. *Board of Registration in Med., supra* at 138 (magistrate "did not find [psychiatrist] to be a credible witness because there were 'simply too many errors to ascribe them to mistake or memory lapse,' and that he observed the demeanor of each witness who contradicted [psychiatrist's] testimony and found the key witnesses to be credible and without bias or motive to lie").

With respect to Patient A, the plaintiff stated that a full breast examination is not a normal part of a preemployment physical for an adolescent girl. He then testified that he did not have any specific recollection of his examination of Patient A. He did recall, however, being questioned by the police shortly after his appointment with Patient A based on Patient A's complaint about the examination. As to any subsequent meetings, however, he testified to being unable to remember any settlement agreement between him, Patient A, and her parents in a court house where he agreed to get psychiatric counseling and have a chaperone present during his examination of female patients. With respect to Patient C, he admitted to conducting an unchaperoned breast examination on her even though he knew

that there was no real reason to do so. As to Patient D, he simply testified that he could not recall leaning up against her during the examination. There were similar memory lapses throughout the plaintiff's testimony, supporting the administrative magistrate's determination as to his lack of credibility.[8]

Because we find that substantial evidence supports the findings, and the administrative magistrate's determinations as to the credibility of the witnesses were well reasoned and supported by the record, we will not disturb the board's final decision and order.

*Conclusion.* The decision of the board revoking the plaintiff's license to practice medicine is affirmed.

*So ordered.*

---

[8]The record also reveals several instances where the plaintiff's counsel appeared to be coaching him. Indeed, the administrative magistrate warned counsel against as much. This further supports the administrative magistrate's finding that the plaintiff lacked credibility.