Tucker, Richard T., J.
INTRODUCTION
This action arises from the decision of the Department of Children and Families (“DCF”) to support an allegation of abuse against Jeffrey DiPilato (“DiPilato”). DiPilato appeals the DCF’s decision pursuant to G.L.c. 30A, §14. Before the court is DiPilato’s Motion for Judgment on the Pleadings. After hearing and review of the entire motion record, I find and rule as follows.
BACKGROUND
The following facts are taken from the administrative record. See Superior Court Standing Order 1 -96, §5. On September 25, 2006, at approximately 5:00 P.M., DiPilato, with his mother Audrey DiPilato, picked up his daughter, Julie, for court-ordered visitation. Shortly thereafter, the two began to argue. Julie became upset because DiPilato wanted to have dinner at his home, rather than go out. At approximately 5:26 P.M., they arrived at DiPilato’s home. Julie threw an apple in the direction of DiPilato, hitting his house. She then picked up a rock and held it in her hand.
DiPilato, believing that Julie was about to throw the rock at his house and break a window, attempted to take the rock out of her hand by putting his arm under her arm, with his back facing her, and opening her hand by pulling her middle finger back so the rock would drop out. In the process of pulling her finger, Julie kicked DiPilato behind his knee with her heel. Julie called the Worcester Police Department, but no arrests were made.
Julie showed a “white line on her fingernail" to the police, telling them she was hurt. Police called for medical assistance. An EMT examined Julie “and said she was fine.” Julie’s mother, Stephanie DiPilato (“Stephanie”) arrived and DiPilato allowed Julie to leave with her. Julie was never taken to the hospital.
On September 27, 2006, Julie was seen by Dr. Benjevin of the Holden Fallon Clinic. He noted that Julie’s middle finger had “slight swelling, but no bruising, was slightly tender with good range of motion, and diagnosed her as having a mild finger sprain.” Julie was a given a splint for her finger to wear for one week. No x-rays were taken.
On September 28, 2006, and September 29, 2006, the DCF received reports of child abuse pursuant to G.L.c. 119, §51A. Pursuant to those reports, the DCF conducted an investigation that included interviews with DiPilato, Julie, Stephanie, and Julie’s siblings, Vanessa and John. DCF also contacted a nurse at the office of Dr. Benjevin, and spoke with Joseph McGill, the guardian ad litem appointed by the Probate Court in connection with the DiPilatos’ divorce. The investigation revealed that the central dispute concerned the amount of force DiPilato used in removing the rock from Julie’s hand. DiPilato maintained that he gently removed the rock from Julie’s hand; Julie stated that DiPilato bent her finger “all the way back."
The DCF concluded, based on information obtained during the investigation and testimony from various witnesses, that the rock was not removed gently from Julie’s hand. The DCF relied heavily on “injuries Julie sustained, as observed by” Dr. Benejvin, a “neutral party," in reaching that conclusion. The hearing officer gave no explanation as to why she credited Dr. Benejvin’s diagnosis of a mild finger sprain instead of the responding EMTs conclusion that Julie was “fine.”
BACKGROUND
1. Standard. An administrative agency’s decision may be set aside only on the grounds set forth in G.L.c. 30A, §14(7). Howard Johnson Co. v. Alcoholic Beverages Control Comm’n, 24 Mass.App.Ct. 487, 490 (1987). These grounds include such reasons as the agency’s decision is not supported by substantial evidence, or is otherwise not in accordance with law. G.L.c. 30A, §14(7)(e), (g). This court is required to give “due weight to the experience, technical competence and specialized knowledge of the agency, as well as to the discretionary authority conferred on it.” G.L.c. 30A; see also Cobble v. Comm’r of Dep’t of Soc. Servs., 430 Mass. 385, 390 (1999). The court’s role is not to “make a de novo determination of the facts or draw different inferences from the agency” or to substitute its judgment for that of the agency. Vaspourakan, Ltd. v. Alcoholic Beverages Control Comm’n, 401 Mass. 347, 351 (1987). As the party challenging the DCF’s decision, DiPilato bears the burden of establishing the decision’s invalidity. Fisch v. Bd. of Registration in Med., 437 Mass. 128, 131 (2002).
2. Substantial evidence. Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). “In assessing the agency’s decision, [courts] show particular deference to credibility determinations ...” Robert v. Office of Campaign and Political Fin., 67 Mass.App.Ct. 315, 322 (2006).
3. Physical Injury. Notwithstanding this deferential standard of review, this court concludes that the DCF’s decision was not supported by substantial evidence. “In determining whether substantial evidence supports a particular finding, a court should evaluate the evidence that detracts from the finding as well as that which supports it.” Doe v. Sex Offender Registry Bd., 74 Mass.App.Ct. 383, 388 (2009). Here, the hearing officer found that the EMT who examined Julie concluded that “she was fine.” The EMTs determination contradicts Dr. Benejvin’s diagnosis of a mild finger sprain, which the hearing officer heavily relied on in supporting the allegation of abuse. The EMT was just as neutral as Dr. Benjevin.
The DCF was obligated to provide “an explicit analysis of credibility and the evidence bearing on it.” *164 Herridge v. Bd. of Registration in Medicine, 420 Mass. 154, 165 (1995), quoting Morris v. Bd. of Registration in Medicine, 405 Mass. 103, 107, cert. denied, 493 U.S. 977 (1989). It did not do so. There is no discernible basis in the evidence for the DCF’s decision to accept Dr. Benjevin’s conclusion that Julie suffered an injuiy in the form a mild finger sprain,[3] as opposed to the EMT’s conclusion that she had not been injured. Without evidence of such injuiy, there is no basis to support an allegation of abuse. See 110 C.M.R. 2.00 (“Abuse means the non-accidental commission of any act by a caretaker upon a child under age 18 which causes, or creates a substantial risk of physical injury . . .”).
The DCF certainly may credit and believe one opinion over the other but the hearing officer must have a reasonable basis for such a choice. “While [a court] can conduct a meaningful review of a decision of less than ideal clarily if the agency’s path may reasonably be discerned, [this court] will not supply a reasoned basis for the agency’s actions that the agency itself has not given.” Costello v. Dept. of Pub. Utils., 391 Mass. 527, 535-36 (1984).
Additionally the hearing officer makes reference to the “white mark” on Julie’s fingernail nine times in her hearing decision. It must be assumed, that the white line was, to the hearing officer, a symptom or evidence of Julie’s injured finger. However, there is no medical evidence to support this conclusion. In fact, there is no explanation of what the white mark on her fingernail means. The hearing officer found, despite this lack of support, that “Julie sustained injuries from the incident — a white mark on her fingernail on the scene, and slight swelling and tenderness when seen by a doctor two days later.” There is no support for this conclusion that the white mark was an injury from the incident. The hearing officer continues to utilize this finding and states that she is “convinced that the appellant. . . used sufficient force to manipulate and leverage the rock out of her hand such that it produced the white line on her fingernail...” (emphasis added). There is no medical evidence to support that anything that the appellant did produced the white line on Julie’s fingernail.[4]
4. Abuse. While the shortcoming above is sufficient to vacate the DCF’s decision and remand for further proceedings, the courtis compelled to address another issue. “Physical injuiy," for the purposes of determining if abuse has occurred, is defined as “soft tissue swelling or skin bruising depending upon such factors as the child’s age, circumstances under which the injury occurred, and the number and location of bruises ...” 110 C.M.R. 2.00 (emphasis added). While particular deference is owed to an agency’s application of its own regulations, see Brookline v. Comm’r of the Dept. of Envir. Quality Eng'g, 387 Mass. 372, 385 (1982), this court is troubled by the DCF’s election not to analyze or explain the circumstances surrounding Julie’s alleged injuiy. Even assuming there was substantial evidence to support a finding that Julie was injured, the nature of her injuiy does not automatically constitute abuse. Instead, the alleged swelling of her finger must be seen in light of the circumstances under which it occurred.
Here, as the hearing officer found, DiPilato believed, as did his mother, that Julie was about to throw a rock at his house and break a window. Her injury, if indeed one occurred, took place in the context of his efforts to restrain her from doing so. An analysis of those circumstances in determining if any resulting injury qualified as abuse would be beneficial.[5]
5. Unlawful procedure. Because the appeal is resolved in favor of DiPilato on other grounds, this court need not reach his claim that the DCF’s decision was based on unlawful procedure.
ORDER
For the foregoing reasons, DiPilato’s Motion for Judgment on the Pleadings is ALLOWED.

 While the hearing officer need not strictly follow the rules of evidence, the conclusions reached by Dr. Benjavin as received by the hearing officer constituted triple hearsay. The investigator testified to calling Dr. Benjaviris office, speaking to a nurse, who then read to the investigator Dr. Benjevin's entries from the medical record. No reason was given for the nonprotection of the medical record in evidence.

 Neither the EMT nor Dr. Benjevin reference the mark.

 The police report of the officer who responded to the scene of the incident notes that the father was advised to seek a CHINS Order in Juvenile Court regarding his daughter.