PAMELA HEACOCK vs. RENT CONTROL BOARD OF
CAMBRIDGE & another.[1]

No. 90-P-1032.

Middlesex. November 20, 1991. - January 29, 1992.

Present: DREBEN, SMITH, & IRELAND, JJ.

*Rent Control*, Exemption. *Real Property*, Ownership. *Words*, "Owner-occupied."

A District Court judge correctly upheld a decision of the Cambridge rent control board adopting a presumption that a long-term owner-occupant of a three-family house, who had conveyed her interest in the property to her son without any intention to evade the city's rent control act prior to entering a nursing home in October, 1985, might return to her owner-occupancy during the first two years of her absence, so long as upon entering the nursing home there was a chance that she would return, with the consequence that a rent increase placed on the property by her son in November, 1985, was valid, where there was substantial evidence before the board to support an implicit finding that the son took "only naked legal title to the premises" and that his mother would continue as beneficial owner [34]; where the board was within its discretion in fashioning the two-year presumption of owner occupancy [34-35]; and where the board was warranted in concluding that a possibility existed that the woman might have returned home within the two-year period. [35]

CIVIL ACTION commenced in the Cambridge Division of the District Court Department on January 4, 1990.

The case was heard by *Lawrence F. Feloney*, J.

*Pamela Heacock*, pro se.

*Vali Buland* for Rent Control Board of Cambridge.

*Ira Yellin* for Clifton Moore.

IRELAND, J. In this tenant's appeal from a District Court judgment affirming a decision by the Cambridge rent control

---

[1]Clifton Moore.

board (board), the only issue is whether the property[2] could be considerd to be owner-occupied, for purposes of the Cambridge Rent Control Act, after the owner entered a nursing home. If the property continued to be owner-occupied, then the rent increase placed on the property was valid; if the property ceased to be owner-occupied, then the apartment was rent controlled and the rent increase was invalid.

The facts are not in dispute. Clifton Moore bought Two Sacramento Place, Cambridge, on September 4, 1953, and a week later conveyed the property to himself and his mother, Mrs. Vera T. Moore, as joint tenants. Although Clifton Moore did not live on the property, his mother did, in unit two. She lived there continuously until October 1985, when, then in her eighties, she moved into a nursing home. In February 1985, eight months before entering the nursing home, she conveyed her interest in the property back to her son. According to her affidavit, this was done with the understanding that anytime she desired he would redeem the property to her. In November 1985, the son raised the rent for unit 3 from $325 to $600. The plaintiff moved into unit 3 in June 1986, and began paying the $600 rent. In 1988, the plaintiff inquired into the rent control status of the property, and in February 1989, a hearing was held. The hearing examiner recommended to the board that the property be found subject to rent control based on her conclusion that the property ceased to be owner-occupied in February 1985, when Mrs. Moore conveyed her interest in the property to her son. The board did not accept the recommendation but remanded the matter for additional consideration of the following issues: (1) whether the property was held by Mrs. Moore's son in "constructive trust"[3] for her so that she continued to have a "beneficial ownership" interest in the property and (2) if the property was held in "constructive trust,"

---

[2]When we use the word "property" in this opinion, we are referring to Two Sacramento Place, not to an individual unit.

[3]The board's use of the term "constructive trust" is incorrect. A more accurate description of the arrangement between Mrs. Moore and her son would be oral trust. See Trovato v. Walsh, 363 Mass. 533 (1973).

under board policy as established in prior cases, at what point after Mrs. Moore entered the nursing home did the exemption cease? After taking additional testimony, the hearing examiner found that, although Mrs. Moore intended to return to the property when her health permitted, "at no time since her admission to the nursing home . . . could [she] have reasonably expected to resume her residency at the property." This conclusion, in the view of the hearing examiner, obviated the necessity of a finding whether Mrs. Moore retained a beneficial interest in the property.

The board, however, implicitly found the existence of a "constructive trust" and concluded that "where a person who is a long term owner-occupant and without any intention to evade the Rent Control Act enters a nursing home, there shall be a presumption that the owner may return to the unit as an owner-occupant during the first two years of absence, so long as upon entering the nursing home there is a chance that the occupant will return." Contributing to the board's "willingness" to consider the property owner-occupied during the first two years was the fact that the unit which Mrs. Moore had occupied remained vacant during the first two years of her stay in the nursing home. The board ruled that the property did not cease to be owner-occupied by Mrs. Moore until February 1987, two years after the conveyance to her son. On appeal, the District Court affirmed the decision of the board. We affirm the judgment.

The plaintiff raises three specific claims of error: (1) that the board's decision depends on a finding that Mrs. Moore continued to be the "owner" despite the examiner's finding, which the plaintiff claims was adopted by the board, that she was not an owner; (2) that the board's two-year presumption of owner-occupancy after an owner moves into a nursing home contravenes the plain language of the board's enabling statute and the statute's purpose as interpreted by the Supreme Judicial Court; and (3) that the board ignored the explicit findings of its own hearing examiner that Mrs. Moore's admission to the nursing home was indefinite and long term

and made a ruling which was not supported by substantial evidence.

First, as to the claim that the board had adopted the examiner's finding that Mrs. Moore was not the owner, the board implicitly found that, even though Mrs. Moore transferred record title to her son, she remained the beneficial owner of an interest in the property. Mrs. Moore did not turn over management of the property to a professional real estate agent, but to her son, who did not own any property other than his home in Rhode Island. See *Trovato* v. *Walsh*, 363 Mass. 533, 536 (1973). Mrs. Moore felt that her son, Clifton, was in a better position to be the record owner, because she was in failing health and feared signing away the property without understanding what she was doing. As in *Trovato, supra* at 533, Mrs. Moore continued to live on the property even after giving record ownership to her son. On this record, there was substantial evidence to support an implicit finding that Clifton took "only naked legal title to the premises" and that his mother would continue as beneficial owner. *Id.* at 534. This would not cut against the purpose of the owner-occupancy exemption to the rent control statute. Mrs. Moore, prior to entering the nursing home, and even while there, considered the property in question her home and not merely a business property. Her "pride of ownership" continued. See *Marshal House, Inc.* v. *Rent Control Bd. of Brookline*, 358 Mass. 686, 695 (1971).

We reject the plaintiff's argument questioning the legitimacy of the two-year presumption of owner occupancy and conclude that the board was within its discretion in fashioning the two-year presumption. "An administrative agency, in proceeding on a case-by-case basis, should be permitted to make refinements and even new rules in light of past experience." *West Bridgewater Police Assn.* v. *Labor Relations Commn.*, 18 Mass. App. Ct. 550, 555 (1984). We do not see this two-year presumption as one which is inconsistent with the statute. The rationale of the owner-occupant exemption, that the keeping of closer relations between tenants and landlords, especially those not in the business of real estate, gen-

erally results in nonexorbitant rents and better upkeep of the property, is not inconsistent with this rule. See *Marshal House, Inc.* v. *Rent Control Bd. of Brookline*, 358 Mass. at 695-696. If applied on a case-by-case basis, the two-year presumption is a humane rule designed to protect owner-occupants who are senior members of the community who are in need of some nursing home care, but who have a chance to return to their homes.

Finally, regarding Heacock's claim that the board ignored the findings of its own examiner in making its ruling, the board was not required to accept the examiner's findings where credibility of witnesses was not at issue, and it may exercise its own judgment and statutory responsibility. See *Morris* v. *Board of Registration in Medicine*, 405 Mass. 103, 110-111 (1989). Based on the testimony of both Gerald MacDonald, the nursing home administrator, and Jim Reed, the home's social services director, there was support in the record for the board's conclusion that there was a chance Mrs. Moore might be able to return to the property and live in her unit with some type of homemaker assistance. Mac-Donald reported (as summarized in the hearing examiner's report on remand) that he was "not sure whether [her] admission was . . . to be short or long term," and Reed thought her stay would be of an "indefinite" duration. On the record before it, the board was warranted in applying its presumption and in concluding there was a possibility Mrs. Moore might have returned home within the two-year period. See *Moulton* v. *Brookline Rent Control Bd.*, 385 Mass. 228, 233 (1982). The board's decision is supported by substantial evidence.

*Judgment affirmed.*