ROBERT P. WEINBERG *vs.* BOARD OF REGISTRATION IN
MEDICINE.

Suffolk. January 3, 2005. - March 16, 2005.

Present: MARSHALL, C.J., GREANEY, SPINA, SOSMAN, & CORDY, JJ.

*Board of Registration in Medicine. Doctor,* License to practice medicine,
Doctor-patient relationship. *Due Process of Law,* Vagueness of regulation.
*Privacy.*

In an appeal from a physician disciplinary proceeding, this court concluded
that the decision of the Board of Registration in Medicine (board) to
revoke the physician's license was supported by substantial evidence that
the physician engaged in conduct forbidden under then current professional
standards in that he had an extended personal and romantic relationship
with a woman for whom he was still acting as physician, which relation-
ship included incidents of sexual intercourse and harmed the patient
[685-687]; further, this court declined to reach issues regarding the board's
authority to consider the physician's attempts to obstruct the underlying
board proceedings when determining an appropriate sanction for his
conduct, where the physician's failure to raise and preserve those issues
below amounted to waiver [688].

This court concluded that there was no merit to a physician's claims that
disciplinary proceedings brought against him based on his sexual relations
with a current patient violated his due process rights and right to privacy
under art. 16 of the Massachusetts Declaration of Rights and the First
Amendment to the United States Constitution [688-690]; further, the physi-
cian failed to demonstrate that the sanction hearing before the Board of
Registration in Medicine (board) was procedurally deficient either on the
ground that it was not recorded or on the ground that his due process
rights were violated by the board's receipt of victim impact testimony
[690-691].

CIVIL ACTION commenced in the Supreme Judicial Court for
the county of Suffolk on November 12, 2002.

The case was heard by *Ireland,* J.

*John G.S. Flym* for the plaintiff.

*James J. Arguin,* Assistant Attorney General, for the
defendant.

SPINA, J. The Board of Registration in Medicine (board), after

full hearing before an administrative magistrate, revoked the license of Robert P. Weinberg to practice medicine. The initial investigation leading to the revocation arose from allegations that Weinberg had engaged in sexual relations and "boundary violations" with a current patient. Weinberg appeals. For the reasons set out below, we affirm the decision of the board.

1. *Background.*

Robert P. Weinberg, D.O., an osteopath, had been licensed to practice medicine in Massachusetts since September 7, 1988, and also was licensed to practice in New York. He was a staff physician at Boston Evening Medical Center (BEMC) from February, 1989, until February, 1997. In July, 1989, a female patient went to BEMC, and Weinberg randomly was assigned to be her primary care physician. Over the course of sixty-one appointments with Weinberg between July 12, 1989, and July 30, 1992, the patient disclosed her history of childhood sexual abuse and discussed her continuing mental health problems. On July 30, 1992, Weinberg committed the patient to a psychiatric hospital, where she remained until September 11, 1992. The basis for her commitment was her worsening depression and suicidal ideation. Weinberg and the patient had become friends, and as part of her discharge plan, the patient's therapist supervised a meeting in which Weinberg agreed to transfer the patient's care to another primary care provider so that they would no longer have a dual relationship.

Nonetheless, after her discharge, the patient saw Weinberg at BEMC on thirty-six more occasions, with her final appointment on September 8, 1994. During this time, Weinberg wrote her thirty prescriptions for medical drugs and forty-three for psychotropic drugs, as well as four additional prescriptions after their last appointment. In the same period, between her discharge from the psychiatric hospital and her final appointment with Weinberg, the patient saw other physicians at BEMC on forty-seven occasions. They wrote her seventy-four prescriptions for medical drugs and 120 for psychotropic drugs. After her last appointment with Weinberg, the patient continued to see other doctors at BEMC through November, 1996. There is no evidence that any of the treatment the patient received was in any way medically inappropriate.

From just before the patient's discharge from the psychiatric hospital until some time in 1994, Weinberg employed the patient as his research assistant, meeting weekly in his office in the evenings to discuss her work. From the fall of 1992 until September, 1995, they also had a personal and sexual relationship, although no sexual contact ever occurred in any professional setting. Weinberg admits to having sexual intercourse with the patient on two occasions in November, 1993.[1]

In October, 1995, in a session with the patient and her therapist, Weinberg admitted to the sexual intercourse and that he had crossed professional boundary lines in his relationship with the patient. He apologized for his actions but did not want to end his friendship with her. He instead agreed to a three-month moratorium on contact with the patient, which he honored. Afterward, telephone contact resumed.

In November, 1996, the patient filed a civil suit against Weinberg alleging negligent treatment and negligent infliction of emotional distress. There was evidence that her relationship with Weinberg had damaged further her already fragile mental health. The suit was settled for $150,000, and the patient signed a release in which she agreed to abstain from voluntarily participating in any investigation conducted by the board concerning Weinberg. The release, however, expressly permitted the patient to disclose "information concerning th[e] settlement . . . to any public agency entitled to receive such information according to its rules and regulations or applicable statute."

In December, 1997, the board received notice of the suit from the Superior Court, presumably under G. L. c. 112, § 5D, and subsequently subpoenaed the patient. In July, 1998, the board notified Weinberg of its investigation. A statement of allegations issued on February 17, 1999, charging Weinberg with committing sanctionable misconduct by having sexual relations with the patient.

In June, 1999, Weinberg's counsel filed a lawsuit on his

---

[1]In a statement letter to the board, the patient describes "continuously perform[ing] oral sex" for Weinberg, and other physical intimacy, in addition to the November, 1993, intercourse. These allegations are not addressed in either the stipulation or the magistrate's findings, but were available to the testifying experts.

behalf against the patient, alleging breach of the settlement contract, fraud, deceit, intentional infliction of emotional distress, and interference with business relationships. The lawsuit was dismissed on the patient's special motion to dismiss under G. L. c. 231, § 59H. After the dismissal, Weinberg, acting pro se, sent a memorandum to the board's complaint counsel and investigator, threatening them with criminal prosecution if they allowed the patient to testify. Based on this conduct, the board sought to amend the allegations, claiming that Weinberg had attempted to obstruct the board proceedings by intimidating the patient and threatening board personnel. Weinberg did not object and that amendment was allowed. In a 2001 letter to the board, Weinberg acknowledged that his memorandum to the board's personnel was unfounded and further, that he had violated the "Code of Medical Ethics" through his relationship with the patient.

An administrative magistrate issued a recommended decision on May 16, 2002, finding that the parties' stipulations and the record supported the conclusion that Weinberg had engaged in an unprofessional sexual relationship with the patient while serving as her physician (count 1). The magistrate cited prevailing standards of medical ethics and conduct from multiple sources, including the American Medical Association's Code of Medical Ethics and Opinions of its Council on Ethical and Judicial Affairs, the 1992 American Medical Association Opinion 8.14 on sexual misconduct in the practice of medicine, the concurring position of the American Academy of Family Physicians and the American College of Physicians, a 1995 set of recommendations to State medical boards from the Minnesota Board of Medical Practice regarding sexual misconduct cases, a 1990 statement of the Massachusetts Medical Society, and § 15 of the 1996 Code of Ethics of the American Osteopathic Association. All of these standards classify sexual relationships with a current patient that begin after the physician-patient relationship has been established as professional misconduct.

Although the magistrate found the record insufficient to fault

Weinberg for filing the lawsuit against the patient (count 2),[2] she did find that Weinberg's memorandum to complaint counsel and the investigator were threats made with the intent to obstruct the disciplinary proceedings against him (count 3).

The board adopted the recommended decision on October 30, 2002, amending it only by adding conclusions of law and sanctions. The conclusions of law stated:

> "A. The Respondent is guilty of conduct which places into question his competence to practice medicine, in violation of G. L. c. 112, § 5 (c) and 243 [Code Mass. Regs. §] 1.03(5)(a)(3).

> "B. The Respondent is guilty of misconduct in the practice of medicine, in violation of 243 [Code Mass. Regs. §] 1.03(5)(a)(18).[3]

> "C. By virtue of having engaged in sexual activity with a current patient, the Respondent is guilty of conduct which undermines public confidence in the integrity of the medical profession and conduct which shows lack of good moral character. See *Raymond* v. *Board of Registration & Discipline in Medicine*, 387 Mass. 708 (1982); *Levy* v. *Board of Registration [& Discipline] in Medicine*, 378 Mass. 519 (1979)."

After considering prior decisions and the mitigating factors of this particular case, the board decided to revoke Weinberg's license to practice medicine, allowing him to petition for reinstatement in three years. The sanction was imposed for each of the violations of law listed in the conclusion section and not a combination of any or all of them.

Weinberg sought judicial review pursuant to G. L. c. 112,

---

[2]The board accepted the magistrate's findings regarding count 2 being unproved, and it did not consider count 2 in its determination of sanctions, despite Weinberg's assertions to the contrary on appeal.

[3]This is a material change from the magistrate's findings, as she, in her factual summary, referred to Weinberg's actions as "gross misconduct," not simple "misconduct." The conclusions of law of the board are what we review. *Heacock* v. *Rent Control Bd. of Cambridge*, 32 Mass. App. Ct. 31, 35 (1992) ("the board was not required to accept the examiner's findings where credibility of witnesses was not at issue, and it may exercise its own judgment and statutory responsibility").

§ 64, from a single justice of this court. On March 19, 2004, the single justice denied the petition for review without hearing, and Weinberg appealed to the full court.

2. *Discussion.*

A. *Board's authority.* There are three sources of authority for the board to hear the complaint against Weinberg. General Laws c. 112, § 5, in relevant part, provides:

> "The board may, after a hearing pursuant to [G. L. c. 30A], revoke, suspend, or cancel the certificate of registration, or reprimand, censure, impose a fine not to exceed ten thousand dollars for each classification of violation, require the performance of up to one hundred hours of public service, in a manner and at a time and place to be determined by the board, require a course of education or training or otherwise discipline a physician registered under said sections upon proof satisfactory to a majority of the board that said physician: . . . (*c*) is guilty of conduct which places into question the physician's competence to practice medicine, including but not limited to gross misconduct in the practice of medicine or of practicing medicine fraudulently, or beyond its authorized scope, or with gross incompetence, or with gross negligence on a particular occasion or negligence on repeated occasions . . .
>
> "The board shall, after proper notice and hearing, adopt rules and regulations governing the practice of medicine in order to promote the public health, welfare, and safety and nothing in this section shall be construed to limit this general power of the board."

Further guidance and authority are provided in 243 Code Mass. Regs. § 1.03(5) (1993):

> "(a) Specific Grounds for Complaints Against Physicians. A complaint against a physician must allege that a licensee is practicing medicine in violation of law, regulations, or good and accepted medical practice and may be founded on any of the following: . . . (3) Conduct which places into question the physician's competence to practice medicine, including but not limited to gross mis-

conduct in the practice of medicine, or practicing medicine fraudulently, or beyond, authorized scope, or with gross incompetence, or with gross negligence on a particular occasion or negligence on repeated occasions . . . [or] (18) Misconduct in the practice of medicine.

"(b) Other Grounds for Complaints Against Physicians. Nothing herein shall limit the [b]oard's adoption of policies and grounds for discipline through adjudication as well as through rule-making."

Finally, case law establishes the principle that a physician who undermines public confidence in the integrity of the medical profession or otherwise shows a lack of good moral character is subject to discipline. *Raymond* v. *Board of Registration in Med.,* *supra. Levy* v. *Board of Registration & Discipline in Med.,* *supra.*

B. *Standard of review.* Under G. L. c. 112, § 64, a person whose license to practice medicine has been revoked may petition the court to "enter a decree revising or reversing the decision of the board, in accordance with the standards for review provided" in G. L. c. 30A, § 14 (7). *Fisch* v. *Board of Registration in Med.,* 437 Mass. 128, 131 (2002). The court may modify or set aside the board's final decision only if the petitioner demonstrates that the decision was legally erroneous, procedurally defective, unsupported by substantial evidence, arbitrary or capricious, or contained one or more of three other enumerated defects not at issue here. *Id.* The court reviews the decision of the board directly, despite this matter being brought as an appeal of a decision of the single justice. *Cherubino* v. *Board of Registration of Chiropractors,* 403 Mass. 350, 352 n.4 (1988).

C. *Correctness of board's decision and sanction.* The board based its decision on two differently weighted findings of Weinberg's wrongful conduct. His personal and sexual relationship with the patient during a time when the facts indicated he was still acting as her physician was the primary basis for discipline. His attempt to obstruct the board's proceedings against him by threatening the complaint counsel and investigator with criminal prosecution was considered as a factor justifying license revocation and demonstrating a lack of full remorse.

In his disposition memorandum and his brief on appeal, Weinberg concedes that a finding of "misconduct in the practice of medicine" can be justified by facts supported by substantial evidence and that his relationship with the patient constituted a violation of an unspecified code of medical ethics. Weinberg's primary basis for appeal is premised on the mistaken assumption that the board's authority to revoke a physician's license is limited to instances of gross misconduct and, further, that specific intent to cause harm must be shown. Neither of these assertions can be reconciled with the statutory scheme or settled case law.

A large part of Weinberg's argument is based on the provisions of G. L. c. 112, § 61, which provides that a professional board of registration may revoke or suspend a professional's license or registration in certain enumerated circumstances, including "gross misconduct in the practice of [the] profession." The board in this case, however, did not base its decision on §  61, but rather on the more extensive and express statutory authority of G. L. c. 112, § 5, and its accompanying regulations, outlined above. The specificity of § 5 is supplemented by the more general provisions of § 61, not controlled by it. Both § 5 (c) and 243 Code Mass. Regs. §  1.03(5)(a)(3) provide that the board, after a hearing, may "revoke, suspend, or cancel" the registration of a physician found by the board to have engaged in "[c]onduct which places into question the physician's competence to practice medicine, *including but not limited to* gross misconduct . . . ." (emphasis added).

Weinberg's extended reliance on *Hellman* v. *Board of Registration in Med.*, 404 Mass. 800 (1989), for the contrary proposition is misplaced. There we interpreted G. L. c. 112, § 5 (c), as appearing in St. 1981, c. 639, which did limit the board's authority for revocation to situations of gross misconduct. *Id.* at 800 n.1. Effective October 1, 1986, the Legislature amended § 5 (c) to add the language "conduct which places into question the physician's competence to practice medicine, including but not limited to." St. 1986, c. 351, § 13. A parallel amendment was made to the regulations at 243 Code Mass. Regs. § 1.03(5)(a)(3). *Hellman* v. *Board of Registration in Med.*, *supra*. Additionally, 243 Code Mass.

Regs. § 1.03(5)(a)(18) was added, permitting discipline for simple "misconduct" as well. See *Hellman* v. *Board of Registration in Med., supra* at 806 n.5.

All of these amendments predate Weinberg's conduct, and the board acted properly in citing them as authority for its decision. Because "misconduct in the practice of medicine" is an independent and sufficient ground to warrant discipline and Weinberg concedes his misconduct, we need not further analyze the grounds for sanction offered by the board. We turn instead to whether the board substantially abused its discretion in choosing an appropriate sanction.

Weinberg had an extended personal and romantic relationship with a woman for whom the magistrate determined Weinberg was still acting as a physician, conduct forbidden under then current professional standards. This dual relationship went on for over two years, including incidents of sexual intercourse, and there is evidence the patient suffered harm as a result of Weinberg's misconduct. The magistrate's findings were detailed, supported by substantial evidence and, moreover, based in large part on a seventy-five paragraph stipulation of the parties. The board considered these findings, including the mitigating elements. The board reviewed the sanctions it had imposed in similar situations of "a serious departure from good and accepted medical practice and a complete abuse of patient trust" and noted that revocation had frequently been determined to be an appropriate sanction. This represents a reasonable use of the board's discretion and is neither arbitrary nor capricious.

Further, the board fulfilled its obligations under G. L. c. 30A, § 11 (8), to state clearly the reasons for its decisions. The board is not required to address each and every legal issue, theory, and case citation relied on by the respondent, as Weinberg asserts. Cf. *Hamilton* v. *Department of Pub. Utils.*, 346 Mass. 130, 137 (1963).

Weinberg has failed to demonstrate why this court should set aside the board's decision. "[A] request for us to interfere with a board's exercise of its sound discretion is only appropriate in the most extraordinary of circumstances." *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 528-529 (1979). This matter does not present such a situation.

D. *Other claims on appeal.* We address the remaining claims in summary fashion.

i. *Obstruction charges.* Weinberg challenges the board's authority to consider his attempts to obstruct the underlying board proceedings when determining an appropriate sanction for his conduct, arguing that the issue of his obstruction was only added to the case by way of an improper amendment to the allegations. Title 243 Code Mass. Regs. § 1.03(2) (1994) provides for a complaint committee to review charges of misconduct before they reach the board, in order to weed out those that are frivolous or lacking in either legal merit or factual basis. The obstruction counts were not part of the original statement of allegations, but rather were added through a motion to amend, and so never went before the complaint committee. Weinberg asserts that the amendment of the statement of allegations in this manner prejudiced him, as the obstruction charges did not arise out of the original factual basis of the complaint. Further, Weinberg asserts that his obstructive conduct was unrelated to the practice of medicine and therefore not an available basis for discipline under 243 Code Mass. Regs. § 1.03(5)(a). Weinberg concludes that this justifies reversal of the board's decision as regards the obstruction counts and sanctions.

The board received a motion to amend the statement of allegations to add the obstruction charges. No written opposition to the motion was filed and it was allowed. Weinberg subsequently filed an answer offering two affirmative defenses — failure to state a claim and the statute of limitations. Nothing in the record indicates that Weinberg ever objected to the addition of the charges or raised any of his jurisdictional or procedural arguments before the board. In fact, his stipulation includes the facts underlying those charges. Weinberg's failure to raise and preserve these issues below amounts to waiver, and we choose not to reach them. See *Sugarman* v. *Board of Registration in Med.*, 422 Mass. 338, 347 (1996).

ii. *Due process, privacy, and First Amendment claims.* Weinberg contends that, because Massachusetts law does not explicitly state that engaging in sexual relations with a current patient is prohibited, he lacked fair warning that his conduct was grounds for discipline. Because disciplinary proceedings

are not "penal or criminal in nature," the statutes and regulations guiding them "need not be drawn as precisely as statutes that touch upon criminal acts." *Cherubino* v. *Board of Registration of Chiropractors*, 403 Mass. 350, 356, 357 (1988), quoting *Caswell* v. *Licensing Comm'n for Brockton*, 387 Mass. 864, 873 (1983). The board is empowered to investigate any complaint that a physician is "practicing medicine in violation of . . . good and accepted medical practice." 243 Code Mass. Regs. § 1.03(5)(a). There is no dispute that the magistrate properly concluded that sexual relations with a current patient generally is forbidden by the various codes of medical ethics and other professional standards, which Weinberg concedes he violated. Through prior adjudication, see *Arthurs* v. *Board of Registration in Med.*, 383 Mass. 299, 312-313 (1981), the board has made it clear it will rely on such standards and this court has supported that approach. See *Sugarman* v. *Board of Registration in Med.*, *supra* at 343-344; *Raymond* v. *Board of Registration in Med.*, 387 Mass. 708, 711-712 (1982); *Arthurs* v. *Board of Registration in Med.*, *supra* at 311-312; *Levy* v. *Board of Registration & Discipline in Med.*, *supra* at 528. We conclude Weinberg was on notice and there was no due process violation.

Weinberg next alleges that the board's disciplinary action impermissibly infringed on his constitutional right to privacy under art. 16 of the Massachusetts Declaration of Rights and the First Amendment to the United States Constitution. Weinberg asserts that free speech and privacy principles offer protection for doctors who engage in consensual sexual relationships with current patients. This argument is offered with only the barest citation to the constitutional provisions themselves, there being no case on point.

Weinberg is not before us as a citizen entitled to the full range of individual rights available to all citizens. Rather, he comes before us as a licensed physician whose professional conduct is subject to State regulation. The conduct in question involves his relationship with someone under his care as a physician. We have long recognized that the board's authority to discipline physicians derives from the principle that "[t]he right of a physician to toil in his profession . . . with all its

sanctity and safeguards is not absolute. It must yield to the paramount right of government to protect the public health by any rational means." *Haran* v. *Board of Registration in Med.*, 398 Mass. 571, 576 (1986), quoting *Lawrence* v. *Board of Registration in Med.*, 239 Mass. 424, 428 (1921). The sanction against Weinberg is unrelated to the rights someone not licensed as a physician might have to engage in the same conduct. See *Leigh* v. *Board of Registration in Nursing*, 395 Mass. 670, 681 (1985), *S.C.*, 399 Mass. 558 (1987) (licensed nurse's unauthorized practice of midwifery).

As regards the obstruction counts, all of Weinberg's due process, privacy, and First Amendment claims are waived, as they were not raised properly or preserved below. See *Sugarman* v. *Board of Registration in Med.*, *supra* at 347.

iii. *Miscellaneous claims.* Weinberg alleges error in the board's consideration of pro se documents he filed seeking to vacate the magistrate's recommended decision, on the ground that such documents were not properly part of the record. Weinberg's counsel filed a motion to withdraw those filings, which was denied. As the documents were never allowed to be withdrawn, they were in fact part of the record and we find no error. Weinberg does not appeal the denial of his motion to withdraw the documents, so we do not address it.

Finally, Weinberg complains that the sanction hearing itself was procedurally deficient, in that it was not recorded and the patient was allowed to give a victim impact statement without reopening the evidence and subjecting her statement to cross-examination. The sanction hearing is dispositional in nature, not part of the underlying fact finding. As such, it does not appear that audio or stenographic recording is currently required by statute or regulation. See 801 Code Mass. Regs. § 1.01(10)(i)(1) (1998). It is important to note that Weinberg was not denied the opportunity to record the proceeding after making a request, but rather, seven weeks after the hearing, his counsel discovered that a transcript did not exist.

Weinberg further alleges that his due process rights were violated by the board's receipt of victim impact testimony before having decided whether to accept the magistrate's recommended decision. Weinberg has submitted no evidentiary material of any

kind to substantiate this claim, his assertion that he properly objected, or the alleged impact of the testimony. On the present record, we cannot properly evaluate the matter.

Further, because the crucial underlying facts of the decision were admitted as part of the parties' stipulation, and Weinberg conceded they amounted to misconduct in the practice of medicine, whatever allegations the patient may have made in her victim impact statement were not likely to influence the board's consideration whether to accept the magistrate's decision. Indeed, despite the victim impact statement, the board held that Weinberg's actions amounted to only simple "misconduct," rejecting the magistrate's assessment that those actions constituted "gross misconduct." See note 3, *supra.*

The action is remanded to the county court for entry of judgment affirming the decision of the board revoking Robert P. Weinberg's license to practice medicine.

*So ordered.*