NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12360


MICHAEL THOMANN  vs.  BOARD OF REGISTRATION OF REAL ESTATE
BROKERS AND SALESMEN.[1]



December 10, 2018.



Real Property, License to sell.  License.  Administrative Law,
    Judicial review.  Due Process of Law, Administrative
    hearing.


     Michael Thomann, a licensed real estate broker, appeals
from the judgment of a single justice of this court affirming a
decision of the Board of Registration of Real Estate Brokers and
Salesmen (board) suspending Thomann's license for ten days.  We
affirm.

     1.  Proceedings before the board of registration.  In
October 2014, the board initiated adjudicatory proceedings
against Thomann, alleging that he had engaged in the business of
real estate brokering through an unlicensed limited liability
company, in violation of 254 Code Mass. Regs. § 2.00(11) (2013)
and 254 Code Mass. Regs. § 3.00(14)(e) (2005); and had failed to
provide a certain notice of agency disclosure to the seller of
real property, in violation of 254 Code Mass. Regs.
§ 3.00(13)(a) (2005).[2]  The board asserted, on the basis of those

_____

     [1] The board, so named, is established by G. L. c. 13, § 54.
The board refers to itself as the "Board of Registration of Real
Estate Brokers and Salespersons."

     [2] The board additionally alleged that Thomann assumed duties
and responsibilities of a business entity engaged in the real
estate brokering business without adequate preparation or
competency, in violation of 254 Code Mass. Regs. § 3.00(14)(e),

violations, that discipline was warranted pursuant to G. L. c. 112, § 61. Thomann denied the allegations against him; asserted that he had conducted his real estate brokering activities through a properly registered business or trade name; and alleged that it was his routine business practice to provide his clients with a specific form of agency disclosure. Over Thomann's opposition, an administrative hearing officer eventually granted the board's motion for a summary decision, concluding that there were no genuine issues of material fact in dispute and that the alleged violations had been established. See 801 Code Mass. Regs. § 1.01(7)(h) (1998). The parties, through counsel, then submitted memoranda in lieu of a sanctions hearing.

The hearing officer's tentative decision, which referenced her summary ruling, determined that the violations had been proved and concluded that a sanction against the respondent's license was therefore warranted.[3] See 801 Code Mass. Regs. § 1.01(11)(c) (1998). Thomann, both individually and through his attorney, filed written objections. The board's final decision, dated September 15, 2016, considered Thomann's objections and adopted the tentative decision with certain modifications. It ordered suspension of Thomann's license for ten days, beginning on October 3, 2016, with reinstatement conditioned on his written certification that he did not practice during the period of suspension; payment of a $1,200 civil administrative penalty; and submission of an application for an appropriate license for Thomann's limited liability company or a certification that the company had been dissolved. See G. L. c. 112, §§ 61, 65A. The board's decision notified Thomann that he could appeal from the decision either by filing a petition for judicial review in the Superior Court within twenty days of his receipt of the decision, pursuant to G. L.

---

by failing to comply with certain liability insurance requirements. See 254 Code Mass. Regs. § 2.00(12) (2013). Although the hearing officer determined that the violation had been established, the board did not consider it a separate violation for purposes of sanction. The violation was not challenged on appeal, and we do not address it further.

[3] The tentative decision did not repeat all of the facts and conclusions of law on which the summary ruling was based. It did, however, expressly provide that "the Ruling on Summary Decision established liability in this forum."

c. 112, § 87BBB, or by filing a petition for review in the county court within thirty days, pursuant to G. L. c. 112, § 64.

On October 19, 2016, Thomann filed a motion in the county court seeking an extension of time to file a petition there, and representing that he received the board's final order on September 30, 2016.  The clerk of the county court treated this motion as a petition for review under G. L. c. 112, § 64, and docketed it as such.  After the board filed the administrative record and both parties filed their briefs, the single justice affirmed the board's final decision and denied all other requests for relief.  This appeal followed.

2.  Procedure for judicial review.  Judicial review of the final decisions of many boards of registration is properly sought by filing a petition in the county court within thirty days of the receipt of notice of the decision.  This procedure is established by G. L. c. 112, § 64, and by G. L. c. 30A, § 14 (7).  See, e.g., Hamel v. Board of Registration of Funeral Directors & Embalmers, 449 Mass. 1008, 1009 (2007); Friedman v. Board of Registration in Med., 414 Mass. 663, 664 & n.1 (1993). The board in this case, at the end of its written decision, informed Thomann that he could proceed in that fashion, and that is essentially what he did.  The single justice also decided the matter under those statutes.

In the case of this particular board, however, another statute applies.  General Laws c. 112, § 87BBB (C), states, with respect to decisions of this board, that any person aggrieved by the decision "may appeal to the superior court sitting in equity for the county wherein he resides or has his principal place of business, or to said court sitting in equity for the county of Suffolk" (emphasis added).  The statute requires the appeal to be filed in the Superior Court within twenty days of receipt of notification of the board's decision; authorizes the Superior Court to hear all the pertinent evidence and to determine the facts; and authorizes the Superior Court to annul the board's decision if it exceeded the board's authority or to grant other relief as justice and equity may require.  Id.  Significantly, § 87BBB (C) then also states that "[t]he foregoing remedy shall be exclusive," and further provides that, from the decision of the Superior Court, "the parties shall have all rights of appeal and exception as in other equity cases" (emphasis added).  Id. Thus, the statute specific to this particular board, § 87BBB, unlike the more generic statute applicable to boards of registration generally, G. L. c. 112, § 64, identifies the

Superior Court, not this court, as the forum for judicial review, and states that this remedy "shall be exclusive."[4]

The notice given by the board at the end of its written decision in this case appeared to give the parties two options for obtaining judicial review of the decision. It informed them that they could proceed either in the county court, pursuant to § 64, or in the Superior Court, pursuant to § 87BBB. That appears to us to be at odds with the plain language of § 87BBB (C), which states that the remedy provided therein shall be exclusive. We encourage parties in future cases to pursue their appeals from this particular board in the Superior Court, pursuant to § 87BBB (C) (see, e.g., Rao v. Board of Registration of Real Estate Brokers & Salesmen, 13 Mass. App. Ct. 922, 922 [1982]), and we invite the board to consider clarifying its notice so that it is consistent with the language of § 87BBB (C), namely that the remedy provided therein "shall be exclusive."[5]

Even though we believe that Thomann should have sought judicial review in the Superior Court under § 87BBB, and not in the county court directly under § 64, we shall proceed to consider his appeal. The single justice clearly had the authority to transfer the matter that was commenced in this

[4] Contrast G. L. c. 112, § 84A, which governs decisions of the Board of Registration in Embalming and Funeral Directing. That statute, like § 87BBB, also identifies a procedure other than a petition in the county court under G. L. c. 112, § 64, as a means of obtaining judicial review. It states that judicial review may be obtained by filing a petition in the District Court within ten days of the board's decision. Unlike § 87BBB, however, § 84A states that the District Court procedure provided therein "is in the alternative to that provided by [§ 64], and a decision of the court upon a petition brought under [§ 84A] shall be final and conclusive" (emphasis added). A party aggrieved by a decision of the Board of Registration in Embalming and Funeral Directing thus can proceed in one of two ways: either in the county court pursuant to § 64, or in the District Court pursuant to § 84A. See Hamel v. Board of Registration of Funeral Directors & Embalmers, 449 Mass. 1008, 1009 n.1 (2007).

[5] If the Legislature believes that we have misconstrued what appears to us to be the plain language and purpose of § 87BBB (C), it is, of course, free to clarify the statute accordingly.

court to the Superior Court; and, vice versa, had it been commenced in the Superior Court, as we believe it should have been, she clearly would have had the authority to transfer it here.  See G. L. c. 211, § 4A.  See also Beres v. Board of Registration of Chiropractors, 459 Mass. 1012, 1013 (2011).[6]

3.  Correctness of the board's decision and sanction.  The single justice reviewed the record before her, including the pleadings and the administrative record filed by the board, and affirmed the board's final decision and order.  We agree with the single justice that there was no error in the board's decision.  See Weinberg v. Board of Registration in Med., 443 Mass. 679, 685 (2005) (under G. L. c. 30A, § 14 [7], court "reviews the decision of the board directly, despite this matter being brought as an appeal of a decision of the single justice").

a.  Facts.  We summarize the facts stated by the hearing officer, as modified and adopted by the board, reserving other facts for later discussion.[7]  We conclude that the findings were supported by substantial evidence.  See Weinberg, 443 Mass. at 685.

Thomann is the sole manager of Boston International Group, LLC (LLC), a Massachusetts limited liability company.  Its certificate of organization represented publicly that it would engage in business including "commercial real estate."  It does not have its own real estate broker's license.  See G. L. c. 112, § 87UU; 254 Code Mass. Regs. § 2.00(11) (2013).  The board found that, "[o]n or about January 3, 2013, Boston

_____

[6] As stated, actions commenced in the Superior Court in accordance with § 87BBB (C) must be brought within twenty days of receipt of notice of the board's decision in order to be timely, whereas actions commenced in the county court pursuant to § 64 must be brought within thirty days.  Thomann represents that he received the final decision on September 30, 2016, and there is nothing to suggest he received any earlier notice.

[7] Like the single justice, we decline to consider evidence that was not before the board.  See G. L. c. 112, § 64 (incorporating standards of review provided in G. L. c. 30A, § 14 [3]-[7]); G. L. c. 112, § 87BBB (C) (on appeal, reviewing court shall hear all "pertinent evidence").  See also Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 630 (2011) (judicial review of administrative agency decision confined to administrative record).

International Group, LLC, [doing business as] Boston International Group, entered into a Marketing Agreement for Exclusive Right to Sell (the 'Marketing Agreement') real property located at 167 Revere Beach Parkway in Chelsea, Massachusetts (the 'Property')." Although the marketing agreement identified only "Boston International Group" and not "Boston International Group, LLC," as the "Broker," substantial evidence supports the board's finding that the LLC was both a party to the agreement and the entity that was actively engaged in the real estate brokering activities for the property. See Duggan v. Board of Registration in Nursing, 456 Mass. 666, 674 (2010). In addition, in August 2013, the LLC (identifying itself in its complaint as "Boston International Group, LLC[, doing business as] The Boston International Group, Ltd") commenced an action in the Superior Court against the other parties to the marketing agreement, alleging breach of the agreement and seeking payment of a brokerage commission to the LLC. The complaint averred:

> "5. On January 3, 2013, the Defendants, Nobrega's Inc. and Robert J. Nobrega, individually and as agent of the [Nobrega Nominee] Trust, and the Plaintiff, entered into an Exclusive Right to Sell Agreement (hereinafter 'the Agreement'), regarding the sale of the Property owned by the Trustee Defendants located at 167 Revere Beach Parkway, Chelsea, Massachusetts.
>
> " . . .
>
> "10. Under the Exclusive Right to Sell Agreement, the Defendants, Nobrega's, Inc. and Robert J. Nobrega, individually and as Trustee of the Nobrega Nominee Trust are obligated to pay the Plaintiff a brokerage commission ([six percent]) upon the sale of Defendant's property during the term of the agreement."

In its answer to a counterclaim filed by the defendants, the LLC also expressly admitted the allegation that "Boston International Group, Boston International Group, Ltd., and Boston International Group, LLC, are not duly licensed as . . . real estate brokers."[8]

---

[8] The LLC subsequently amended its complaint to substitute "Michael Thomann [doing business as] The Boston International Group" for the LLC as the plaintiff in the action. Nonetheless, the board was entitled to find, and did so find, based on all the evidence in the record, including the representations made

b.  Conducting brokering activities through unlicensed entity.  The gravamen of Thomann's argument is that he performed all of the brokering activity under his individual real estate broker's license using his business name, "Boston International Group," and not through the LLC.[9]  On the evidence before it, however, the board was warranted in concluding, as it did, that Thomann had actually engaged in the business of real estate brokering through the LLC (which had no license) without first obtaining a separate license for the LLC, in violation of 254 Code Mass. Regs. §§ 2.00(11) and 3.00(14)(e).  That conclusion was supported by substantial evidence.

The LLC's certificate of organization indicates that Thomann is its sole manager.  The LLC's business was described in this public filing to include services related to "commercial real estate" and "any activities directly or indirectly related thereto."[10]  Additionally, in a draft fee agreement for the transaction in this case, Thomann had presented the LLC and himself to the client as the "Seller's Agent," and outlined the fee for services due on the sale of property.  A notation on the agreement indicates that it was provided to the client. Further, when the dispute later arose, the lawsuit was commenced against the client in the LLC's name demanding payment of a real estate brokerage fee; in the same action, the LLC acknowledged that it was not licensed to engage in the real estate business. The board did not err in concluding that Thomann's conduct -- acting through the unlicensed LLC to broker the sale of the property -- violated 254 Code Mass. Regs. §§ 2.00(11) and 3.00(14)(e).

---

in the original complaint, that the LLC was both a party to the marketing agreement and the entity that served as the broker.

[9] A real estate broker may "operat[e] under a business or trade name (doing business as)," provided notice is given to the board.  254 Code Mass. Regs. § 3.00(3) (1998).  Thomann had in fact earlier provided notice to the board that he was doing business as "Boston International Group."  The board apparently never was told, however, and would have had no reason to know, that Thomann was actually operating through a limited liability company.

[10] In addition, Thomann stated to the board's investigator that "Boston International Group LLC is registered with MA RE Board."

c. <u>Notice of agency disclosure</u>.[11] On appeal, Thomann also challenges the determination that he violated the agency disclosure requirements of 254 Code Mass. Regs. § 3.00(13)(a). That regulation requires real estate brokers to provide prospective purchasers and sellers of real estate with "a notice <u>developed and approved by the board</u> which clearly discloses the relationship of the broker or salesperson with the prospective purchaser or seller of the real estate . . . at the time of the first personal meeting between the prospective purchaser or seller and the broker or salesperson for the purpose of discussing a specific property" (emphasis added). <u>Id</u>.

In the summary decision ruling, the hearing officer determined that there was no evidence that Thomann gave the board-approved agency disclosure notice to the seller of the property that was the subject of the marketing agreement. Although Thomann asserted -- without a supporting affidavit or other evidence -- that he had in fact provided notice, the sample agency disclosure form he claimed to have provided to his real estate clients differed in material respects from the form approved by the board. The hearing officer also found that Thomann failed to provide the form to the client at the appropriate time, i.e., in 2013, at the time the LLC entered into the marketing agreement and undertook to provide broker services, and that he failed to retain a copy of the form for the time period required by the regulations. See 254 Code Mass. Regs. § 3.00(13)(a)(1) (three years from date of notice). There was substantial evidence in the record to support the finding of a violation in this respect.[12]

d. <u>Other claims of error</u>. On appeal, Thomann also raises asserted other claims. He contends that the board failed to

---

[11] On appeal from the single justice's judgment, Thomann asserts for the first time that he used the board-approved disclosure form, and appended a blank copy of the form to his brief. We decline to reach claims and assertions like this that were not raised during the administrative proceedings or before the single justice. See <u>Weinberg</u> v. <u>Board of Registration in Med</u>., 443 Mass. 679, 688 (2005).

[12] Although the board's final decision and order does not contain express findings concerning the hearing officer's summary ruling, it references the summary ruling, and it adopts the tentative decision (with certain modifications), which in turn referenced both the regulatory violations and the supporting summary ruling.

reasonably accommodate his alleged disability, and otherwise violated his right to due process. He also claims that he was denied the assistance of legal counsel. While we do not address each of his claims specifically, we have reviewed each of them and find them without merit. With respect to the right to counsel, the record indicates that Thomann was in fact represented by multiple attorneys during the course of the administrative proceedings, and that he discharged his attorney after objections to the tentative decision had been filed. The record also demonstrates that Thomann was given multiple extensions of time to file materials at various stages of the proceedings. With respect to his claim of disability, there is nothing in the administrative record to suggest that Thomann requested or was denied any reasonable accommodation by the board, or that he substantiated any such claim. In sum, the record amply supports the conclusion that the proceedings before the board comported with due process requirements. See, e.g., Langlitz v. Board of Registration of Chiropractors, 396 Mass. 374, 377 (1985).

4. Sanction. Once statutory or regulatory violations have been established, the administrative agency has discretion in determining the appropriate sanction. See G. L. c. 112, §§ 61, 65A. On appeal, we consider only whether the sanction imposed was a reasonable exercise of that discretion. See Sugarman v. Board of Registration in Med., 422 Mass. 338, 347-348 (1996). See also Vaspourakan, Ltd. v. Alcoholic Beverages Control Comm'n, 401 Mass. 347, 355 (1987). A reviewing court will not interfere with the agency's imposition of a penalty except in the most extraordinary circumstances. Id. No such circumstances are present here.

In this case, we conclude that the board reasonably exercised its discretion when it sanctioned Thomann. The $1,200 civil administrative penalty was within the range permitted by statute. See G. L. c. 112, § 61; G. L. c. 112, § 65A. "Given that the range of penalties is for the agency, the fact that the [board] imposed more lenient penalties for similar violations in the past does not render the sanctions against [Thomann] arbitrary or capricious." BAA Mass., Inc. v. Alcoholic Beverages Control Comm'n, 49 Mass. App. Ct. 839, 849 (2000). The ten-day suspension given to Thomann is actually less than the period imposed by the board for similar violations in other cases, and is reasonable in the circumstances of this case. With respect to the requirement that Thomann either obtain a real estate brokering license for the LLC or certify that the LLC has been dissolved, we conclude that that requirement is

also reasonable, particularly in light of the business purposes articulated in the LLC's certificate of organization.

5. <u>Conclusion</u>. For all of these reasons, we agree with the single justice that the board's decision suspending Thomann's license for ten days, imposing a $1,200 civil penalty, and imposing certain conditions on the reinstatement of his license was supported by substantial evidence and free from any errors of law.

<u>Judgment affirmed</u>.

The case was submitted on briefs.
<u>Michael Thomann</u>, pro se.
<u>Maura Healey</u>, Attorney General, <u>& Kimberly A. Parr</u>, Assistant Attorney General, for Board of Registration of Real Estate Brokers and Salesmen.