SUPREME JUDICIAL COURT 
 
 MARGO ROMAN vs. BOARD OF REGISTRATION IN VETERINARY MEDICINE

 
 Docket:
 SJC-13653
 
 
 Dates:
 May 6, 2025
 
 
 Present:
 
 
 
 County:
 
 

 
 Keywords:
 Veterinarian. Board of Registration in Veterinary Medicine. Administrative Law, Agency, Proceedings before agency, Substantial evidence. Evidence, Administrative proceeding. Electronic Mail
 
 

             The petitioner, Margo Roman, appeals from a judgment of the county court upholding a final decision and order of the Board of Registration in Veterinary Medicine (board), which suspended, for two years, her license to practice as a veterinarian.  We affirm.
            Facts.  In a tentative decision, which was later adopted as the final decision of the board, a hearing officer made the following findings of fact, which are not in dispute.
            At all relevant times, Roman, a licensed veterinarian, owned Main Street Animal Services of Hopkinton (MASH).  On March 16, 2020, after the Governor and the President had declared, respectively, a State and national emergency due to the COVID-19 pandemic, Roman authored and sent an e-mail message to MASH clients (March 16 e-mail message), titled "Update on Coronavirus Precautions at MASH."[1]  In that e-mail message, Roman wrote:
"Additional information to protect yourselves[2]:  Dr. Roman has encouraged MASH clients to get an ozone generator for their homes, because ozone is important for prevention (because it disinfects) and [a] possible cure for the coronavirus.  There is a link on our website under 'resources' to find the companies that we recommend from whom you can buy an ozone generator and ozone products.  We know that ozone is antiviral, antibacterial, anti-fungal, and reduces pain and infection.  Medical ozone then floods the body with life-saving oxygen and helps both the animal and humans.  If you buy an ozone generator, let the company know that you are a MASH client; they understand how we have tried to educate our clients to be protective.
". . . .
"Homeopathically many of our clients already have the homeopathic first aid kit and in it is homeopathic arsenicum 30 C that is one of the recommended remedies for this coronavirus.  There is also literature which states that homeopathic phosphorous and bryonia are other remedies that can be supportive during the virus outbreak, and gelsenium can also be helpful.
". . . .
"While it is comforting that the World Health Organization has established that dogs are not likely to get sick from and transmit COVID-19, the virus can stay on the surfaces of the hair of a pet and that is one of the big reason[s] that we are trying to practice extra hygiene.  Due to the evolving nature of the COVID-19 pandemic clients need to follow our suggestions in order to protect themselves and their friends and loved ones, as well as our entire MASH family, and everyone with whom we come into contact."
            The board noted that Federal regulations define "ozone" as "a toxic gas with no known useful medical application in specific, adjunctive, or preventive therapy.  In order for ozone to be effective as a germicide, it must be present in a concentration far greater than that which can be safely tolerated by [humans] and animals."  21 C.F.R. § 801.415.  At times after the date of the March 16 e-mail message, Federal agencies warned marketers not to make claims that ozone therapy could treat or prevent COVID-19 because such claims were not supported by scientific evidence.
            At the time Roman sent the March 16 e-mail message, she was serving a term of monitored probation by the board pursuant to a written disciplinary agreement executed on or about April 11, 2018.  She had also received other disciplinary action by the board.
            Procedural background.  After receiving a complaint regarding the March 16 e-mail message, the board issued an order to show cause to Roman on or about January 13, 2021.  The order to show cause alleged, among other things, that Roman violated G. L. c. 112, § 61 (1), by practicing her profession beyond the scope of her license.  Roman responded, and motion practice ensued.  In a summary decision issued on January 19, 2022, a hearing officer determined that Roman's March 16 e-mail message, by recommending a treatment for a disease in human beings, constituted practice beyond the scope of her licensure and conduct that called into question her competence to practice the veterinary profession, both in violation of G. L. c. 112, § 61 (1).  Roman unsuccessfully sought reconsideration.
            A formal sanctions hearing took place before a different hearing officer, who issued the tentative decision discussed supra.  The tentative decision did not propose a sanction, but it did address (and reject) Roman's arguments that she did not violate G. L. c. 112, § 61 (1), and it reviewed factors in aggravation and mitigation to be considered when determining the sanction to be imposed.
            Roman lodged objections to the tentative decision and filed a motion to strike.  In its final decision, the board overruled each objection and denied the motion to strike.  The board thus adopted the tentative decision without modification.  In determining an appropriate sanction, the board considered several factors in mitigation and in aggravation.  In mitigation, the board noted that there was no evidence of any bad intent on Roman's part and no evidence that she intended any harm; that there was no evidence that anyone had followed her guidance as discussed in the March 16 e-mail message; and that Roman believed she was following the American Veterinary Medical Association (AVMA) veterinarians' oath and the AVMA One Health Initiative.[3]  In aggravation, the board considered Roman's disciplinary history, noting that she had been disciplined in a series of previous cases dating back to 2008 and that when she sent the March 16 e-mail message, she was serving a period of monitored probation pursuant to a consent agreement.  Notably, although she had agreed to a two-year period of probation in that case, she was still on probation at the time of the final decision more than five years later due to her failure to comply with the terms of the agreement.  In view of Roman's misconduct and these mitigating and aggravating factors, the board suspended her license to practice as a veterinarian for two years.
            Roman thereafter filed a petition for review in the county court pursuant to G. L. c. 112, § 64.  After a hearing, the single justice affirmed the final decision.  Roman now appeals.
            Discussion.  "Under G. L. c. 112, § 64, a person whose license to practice medicine has been revoked may petition the court to 'enter a decree revising or reversing the decision of the board, in accordance with the standards for review provided' in G. L. c. 30A, § 14 (7)."  Kippenberger v. Board of Registration in Veterinary Med., 448 Mass. 1035, 1035 (2007), quoting Weinberg v. Board of Registration in Med., 443 Mass. 679, 685 (2005).  "Section 14 (7), in turn, instructs us to set aside or modify the decision only if the substantial rights of a party may have been prejudiced because the agency decision is '(1) in violation of constitutional provisions; (2) in excess of the board's authority; (3) based on an error of law; (4) unsupported by substantial evidence; or (5) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law'" (citation omitted).  Welter v. Board of Registration in Med., 490 Mass. 718, 723-724 (2022), cert. denied, 143 S. Ct. 2561 (2023).  Although this is an appeal from the decision of the single justice, we review the board's decision directly.  Franchini v. Board of Registration in Podiatry, 490 Mass. 1015, 1017 (2022).  As the party challenging the board's decision, Roman "bears 'a heavy burden,' for we 'give due weight to the [board's] expertise, as required by § 14 (7)."  Welter, supra at 724, quoting Massachusetts Ass'n of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 263-264 (2001).  Roman has not carried her heavy burden.
            First, the board committed no error of law in determining that by sending the March 16 e-mail message, Roman practiced veterinary medicine.  The practice of veterinary medicine is defined in G. L. c. 112, § 58:
"Any person shall be regarded as practicing veterinary medicine within the meaning of this section who either directly or indirectly, diagnoses, makes a prognosis, treats, administers, prescribes, operates on, manipulates or applies any drug, biologic, or chemical or any apparatus or appliance for any disease, pain, deformity, defect, injury, wound or physical condition of any animal for the prevention of or to test the presence of any disease, or who cuts any tissue, muscle, organ or structure of any animal for the above described purposes or purpose or for the purpose of altering the natural condition of any animal or for any other purpose, cause or reason whatsoever or who holds himself out as being able, available or legally authorized so to do" (emphasis added).
            Contrary to Roman's suggestion, G. L. c. 112, § 58, does not limit the practice of veterinary medicine to hands-on care of an individual animal, but encompasses a broad range of activities, including "hold[ing] [one]self out as being able, available or legally authorized" to do any of the listed activities.  In the March 16 e-mail message, Roman "[held] [her]self out as being able, available or legally authorized" to practice veterinary medicine.  She sent the email message on behalf of MASH to her veterinary clients, explaining the pandemic-related policies and protocols by which she would treat her clients' animals and provide medicine to them.  This conduct fits comfortably within the broad language of § 58.
            Second, the board did not commit legal error by finding that Roman practiced her profession beyond the authorized scope of her license, G. L. c. 112, § 61 (1), nor was that finding arbitrary or capricious.  Her veterinary license plainly did not authorize her to provide therapeutic advice to human beings, as she did in the March 16 e-mail message.  Rather, veterinary medicine is limited to the treatment of nonhuman animals.  See G. L. c. 112, § 54A (defining "animal" in relevant part as "any animal other than man"); G. L. c. 112, § 58.  To the extent there is any question about the boundaries between treatment of animals and of humans, we defer to the board's knowledge and expertise in drawing those boundaries.  Regardless of the scientific merits of Roman's claims that, for example, ozone could provide an effective treatment for COVID-19, she was not authorized to make such medical and health recommendations to her human clients while practicing as a veterinarian.  Nor was she authorized to urge her human clients to purchase particular ozone-generating devices from particular vendors, via links in her veterinary practice's website, while cloaking herself in her authority as a veterinarian.  All these recommendations were targeted at human health, not at animal health.  The board's determination that Roman practiced her profession beyond the scope of her licensure is well supported by the facts.
            We are not persuaded by Roman's arguments to the contrary.  It is doubtless true, as she states, that she sent the March 16 e-mail message at the beginning of the COVID-19 emergency, a time of much uncertainty and confusion.  The board, however, was not obligated to excuse her conduct on this basis or to give this circumstance any more weight than it did.  We also reject her claim that the board drew an arbitrary distinction between the first part of the March 16 e-mail message, concerning the COVID-19 procedures at MASH, and the second part, making health recommendations for humans.  Simply put, that distinction is far from arbitrary:  the former provided needed information to her clients within the scope of her practice, and the latter was well beyond that scope.
            Nor do we agree that the board improperly targeted Roman because it disapproved of her speech.[4]  "[B]ecause licensed professionals are subject to regulation, they do not come before us as citizens 'entitled to the full range of individual rights available to all citizens,'" and in particular, they may be subject to restrictions related to speech.  Schoeller v. Board of Registration of Funeral Directors & Embalmers, 463 Mass. 605, 614 (2012), quoting Weinberg v. Board of Registration in Med., 443 Mass. 679, 689 (2005).  The board properly disciplined Roman for the statements that she made while practicing her profession.  By making those statements, Roman was not merely sharing general scientific knowledge; she was making specific recommendations about the treatment of COVID-19 in human beings and even urging her clients to purchase certain products from certain vendors for that purpose.  Moreover, the issue before the board was not whether the treatments she recommended were effective against COVID-19; it was whether, while practicing as a veterinarian, she could make such recommendations to her human clients.  The board neither erred nor acted arbitrarily and capriciously by determining that she could not.
            Finally, Roman argues that the sanction imposed by the board was arbitrary, capricious, and excessively punitive.  We disagree.  In reviewing the sanction, "[a] court cannot substitute its discretion for an agency's, 'nor can the reviewing court interfere with the imposition of a penalty by an administrative tribunal because in the court's own evaluation of the circumstances the penalty appears to be too harsh.'" Welter, 490 Mass. at 729-730, quoting Vaspourakan, Ltd. v. Alcoholic Beverages Control Comm'n, 401 Mass. 347, 355 (1987).  "A court will interfere with the agency's discretion in this area 'only . . . in the most extraordinary of circumstances.'"  Welter, supra at 730, quoting Vaspourakan, 401 Mass. at 355.  See Levy v. Board of Registration & Discipline in Med., 378 Mass. 519, 528-529 (1979).  No such circumstances are present here.  The board's decision reflects careful consideration of Roman's conduct, as well as the aggravating and mitigating circumstances put forward by the parties.  Contrary to Roman's argument, the board did not abuse its discretion by considering her prior disciplinary history in aggravation merely because her prior misconduct was different in kind from that at issue here.  In the circumstances of this case, the board properly found that Roman's history evidenced a pattern of failing to comply with the requirements of her profession.  The board did not abuse its considerable discretion by suspending Roman's license for two years.
Judgment affirmed.
            Martha M. Coakley (Kevin Y. Chen also present) for the petitioner.
            Grace Gohlke, Assistant Attorney General, for the respondent.
            William E. Evans & Kevin P. Martin, for Randy Aronson & others, amici curiae, submitted a brief.
 
footnotes

 
            [1] As the single justice noted, the term "clients" refers to the human owners of the animals treated by Roman and MASH.
            [2] The first part of the March 16 e-mail message, not quoted here, informed clients of the precautions that would be taken at MASH during the emergency, for example, postponing routine visits and providing for contactless pickup of medicine.  The March 16 e-mail message also mentioned that Roman uses various nutritional supplements and suggested "a whole food healthier diet with less sugar."  These portions of the March 16 e-mail message were not addressed in the tentative decision.
            [3] As explained in the final decision, the AVMA One Health Initiative "recognizes the interconnectedness of animals, humans and the environment and collaborative efforts to attain optimal health for all."
            [4] Roman suggests that the single justice applied an overbroad standard regarding her speech.  As noted supra, however, we are reviewing the board's decision directly.