NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-928

OCTAVIUS ROWE

vs.

CIVIL SERVICE COMMISSION & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Octavius Rowe appeals from the entry of judgment on the pleadings in favor of the Boston Fire Department (BFD) and the Civil Service Commission (commission).  On appeal, Rowe claims the judges erred in concluding that the commission's decision was supported by substantial evidence and was not arbitrary, capricious, and an abuse of discretion, denying his motion for a preliminary injunction, determining that the commission's decision did not violate his right to free speech under the First Amendment to the United States Constitution, and denying his motion for reconsideration.[2]  We affirm.

_____

[1] Boston Fire Department.

[2] The same judge decided the cross motions for judgment on the pleadings and the motion for reconsideration.  A different judge resolved the motion for a preliminary injunction.

Pursuant to G. L. c. 31, § 44, "[a]ny party aggrieved by a final order or decision of the commission following a hearing pursuant to any section of this chapter or chapter thirty-one A may institute proceedings for judicial review in the superior court within thirty days after receipt of such order or decision."  Review of the commission's decision in the Superior Court is conducted under the highly deferential standards set forth in G. L. c. 30A, § 14, to determine whether it is supported by substantial evidence, G. L. c. 30A, § 14 (7) (e), and whether the decision is arbitrary, capricious, or otherwise not in accordance with the law, G. L. c. 30A, § 14 (7) (g).  Because Rowe has appealed from the commission's decision, he bears the burden of establishing that the decision is invalid.  See Police Dep't of Boston v. Kavaleski, 463 Mass. 680, 689 (2012); Brackett v. Civil Serv. Comm'n, 447 Mass. 233, 242 (2006).  This is a "heavy burden," Massachusetts Ass'n of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 263-264 (2001), because we give "due weight to the experience, technical competence, and specialized knowledge" of the commission in deciding these matters.  G. L. c. 30A, § 14 (7).

Rowe claims that the commission's decision was not supported by substantial evidence, and that it was arbitrary, capricious, and otherwise not in accordance with the law.  We disagree.  Substantial evidence is "such evidence as a

2

reasonable mind might accept as adequate to support a conclusion."  G. L. c. 30A, § 1 (6).  See Singer Sewing Mach. Co. v. Assessors of Boston, 341 Mass. 513, 517 (1960).  A decision is arbitrary and capricious when it lacks any rational explanation that reasonable persons might support.  Attorney Gen. v. Sheriff of Worcester County, 382 Mass. 57, 62 (1980).

Here, the commission affirmed BFD's decision to terminate Rowe's employment as a firefighter based on violations of several of the BFD's rules including those prohibiting discrimination, harassment, and use of abusive or threatening language, as well as their rule regulating the use of social media platforms.  The commission conducted a detailed evaluation of the abundance of evidence from Rowe's social media posts that attacked others based on their religion, sexual orientation, and race.  The posts, many of which Rowe admitted to having authored, employed abusive, threatening, and offensive language. It was reasonable for the commission to find that all of Rowe's statements and posts constituted conduct unbecoming a

firefighter,[3] and prejudicial to good order, whether made on or off duty.[4]

Rowe also made a variety of First Amendment claims related to his termination, some of which are not properly before us.[5] In an argument that is properly before us, Rowe claims his right to free speech was violated because he was terminated for his social media posts.  We disagree.

In general, a public employer "may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech."

---

[3] The commission was not required to credit Rowe's evidence regarding the good work he has done in the community or his exemplary performance as a firefighter.  See Ingalls v. Board of Registration in Med., 445 Mass. 291, 301 (2005).

[4] Contrary to Rowe's claim, his status of being on or off duty was not relevant to the commission's task, given department rule 18.44(a), which prohibits "[c]onduct unbecoming a member, whether on or off duty, which tends to lower the service in the estimation of the public."  As the commission noted, there is a substantial correlation or nexus between Rowe's off-duty conduct and his employment, thus enabling BFD to discipline him for his off-duty misconduct.  See Cambridge v. Baldasaro, 50 Mass. App. Ct. 1, 4 (2000).

[5] For the first time on appeal, Rowe claims that because the initial complaint about him -- the Facebook photograph of him wearing the "Caucasians" sweatshirt -- did not warrant further investigation, all the evidence of his misconduct that the BFD's investigation uncovered should be excluded as "fruit of the poisonous tree."  This claim was neither made before the commission, nor in the Superior Court, and accordingly, it is waived.  See Rivas v. Chelsea Hous. Auth., 464 Mass. 329, 336 (2013).  Rowe's claims that his rights to free association and freedom of religion were violated meet the same fate.

4

Rankin v. McPherson, 483 U.S. 378, 383 (1987). However, a public employee's rights are not absolute, and the employee must accept certain limitations on their freedom of speech. See Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). To determine where those limitations exist, we apply a two-part test. Initially, we determine whether the employee was speaking "as a citizen upon matters of public concern" when making the statements at issue.[6] Pereira v. Commissioner of Social Servs., 432 Mass. 251, 257 (2000), quoting Connick v. Myers, 461 U.S. 138, 147 (1983). If so, then we must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pereira, supra, quoting Pickering v. Board of Educ., 391 U.S. 563, 568 (1968). In performing that balance, the question becomes "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Garcetti, supra.

Here, both the commission and the judge assumed that Rowe was speaking as a citizen on matters of public concern. From

---

[6] An expression of public concern is one that relates "to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983).

5

there, the inquiry became whether the BFD had an adequate justification for treating Rowe differently from any other member of the general public. The judge properly determined that because Rowe was a government employee, the BFD -- as a government entity -- "has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." Garcetti, 547 U.S. at 418.

The BFD and its employees hold trusted positions in the community. In those positions, firefighters must serve all residents of the city, regardless of their religion, sexual orientation, or race. As the judge explained,

> "The hateful, derogatory statements made by Rowe lowers the public's estimation of the [BFD] in the eyes of city residents, especially those who identify as members of the groups Rowe targeted. Consequently, while Rowe may have been speaking on matters of public concern as a citizen, his statements impair the proper function of the [BFD], in that they erode the public's trust in the [BFD], and his speech is not constitutionally protected."

Rowe posted numerous statements that were detrimental to the reputation of the BFD within the community it serves. The posts were hateful, discriminatory, and, in at least one instance, violent. This substantial misconduct provided just cause for Rowe's termination. Rowe did not carry his heavy burden to establish that the commission's decision was not supported by substantial evidence, or that it was arbitrary,

6

capricious, or otherwise not in accordance with the law.  See

G. L. c. 30A, § 14 (7) (e), (g).[7]

Finally, the judges properly denied Rowe's motions for a

preliminary injunction and for reconsideration.  As the judge

recognized at the hearing on Rowe's motion for a preliminary

injunction, G. L. c. 30A, § 14, does not allow for injunctive

relief, and we are reluctant to read that remedy into the

statute.  See Loffredo v. Center for Addictive Behaviors, 426

Mass. 541, 547 (1998).  In any event, Rowe failed to demonstrate

any of the necessary elements to entitle him to injunctive

---

[7] Rowe also claims that the BFD discriminated against him based
on his race.  Rowe, who is Black, claims other white
firefighters, who allegedly made racist comments, were not
terminated.  However, as the judge and the commission noted, two
of these firefighters resigned.  The third, M.G., was
investigated and ultimately suspended, but his cited conduct was
more isolated in scope than Rowe's conduct.  Although the BFD
disciplined M.G., the commission concluded that the department
had not pursued the allegations against M.G. with the "same due
diligence" as those against Rowe.  As a result of that
conclusion, the commission initiated a "Section 72 inquiry," see
G. L. c. 31, § 72, and ordered the BFD to further investigate
whether M.G. allegedly used the "n-word" in a social media post.
The commission stated that M.G.'s section 72 inquiry did not
detract from the "overwhelming" evidence that Rowe made bigoted
comments about individuals based on their religion, sexual
orientation, and race, and the section 72 inquiry was meant to
ensure that any firefighter posting bigoted comments should find
another occupation.  The BFD investigated and submitted findings
that M.G. had lied and did, in fact, make the "n-word" posting,
but it could not determine whether the use of the word was meant
to be "pejorative" and thus suspended M.G. for two tours.
Reviewing its limited options provided by G. L. c. 31, § 72, the
commission asked the BFD to consider increasing the discipline
and closed the inquiry.

relief.  See Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).  Accordingly, Rowe's request was properly denied.

Rowe moved for reconsideration based on his claim that the judge and the commission failed to consider the conduct of firefighter M.G. in assessing Rowe's termination.  In support of his claim, Rowe offered the commission's recommendation under G. L. c. 31, § 72, that the BFD consider further discipline for M.G. because of his social media post.  As noted above, see note 6, supra, the judge and the commission specifically considered this evidence, noted that it had little relevant bearing on Rowe's misconduct, and concluded that he was properly

terminated.  The motion for reconsideration was properly denied.[8]

Judgment affirmed.

By the Court (Vuono, Meade & Walsh, JJ.[9]),

*Joseph F. Stanton*

Clerk

Entered:  November 6, 2023.

---

[8] Rowe also claims that the judge erred by denying his motion to correct the record.  We disagree.  Rowe sought to "correct" the record pursuant to Mass. R. A. P. 8 (e), as appearing in 481 Mass. 1611 (2019), to include the commission's § 72 recommendation regarding M.G.  However, Rowe failed to follow G. L. c. 30A, § 14 (6), which governs the supplementation of the record.  In any event, both the commission and the judge found unpersuasive the evidence regarding M.G.'s misconduct with respect to overturning Rowe's termination.  There was neither error, nor an abuse of discretion in denying the motion.

[9] The panelists are listed in order of seniority.